MATTATUCK MUSEUM-MATTATUCK HISTORICAL SOCIETY *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.
(15372)

Peters, C. J., and Borden, Berdon, Norcott and Palmer, Js.

Argued April 23—officially released July 23, 1996

*W. Fielding Secor*, for the appellant (plaintiff).

*Beth Z. Margulies*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Charles A. Overend*, assistant attorney general, for the appellee (named defendant).

BERDON, J. The dispositive issue raised in this appeal is whether, for the purposes of eligibility for unemployment compensation benefits, the provision of art courses by the plaintiff, Mattatuck Museum-Mattatuck Historical Society,[1] constitutes an activity within its usual course of business. The plaintiff appeals from the judgment of the trial court in which the court held that the employment security board of review (board) had properly concluded that the plaintiff had failed to prove that the claimant, Karen Perrella,[2] was employed as an independent contractor under the provisions of the Unemployment Compensation Act (act).[3] We affirm the judgment of the trial court.

The following facts relevant to this appeal are undisputed. The plaintiff operates largely as an exhibition hall for regional historic artifacts and art. According to its own literature, however, the plaintiff also offers several artistic programs, including lectures, workshops, and arts and crafts courses, which are the subject of this appeal.

A variety of instructional art courses were offered by the plaintiff. The classes were held at the museum and taught by individuals hired by the plaintiff. Enroll-

---

[1] The Mattatuck Historical Society operates the Mattatuck Museum. For simplicity, we refer solely to the Mattatuck Museum as the plaintiff.

[2] Perrella was named as a defendant in the administrative appeal to the Superior Court.

[3] General Statutes § 31-222 et seq.

ment was open to the general public, and registration fees for the courses were discounted for museum members. In an effort to publicize the courses, the plaintiff prepared and distributed brochures describing the nature of the courses being offered, course schedules, and the cost of enrollment.

Perrella contacted the plaintiff to express her interest in teaching art courses, and was employed in January, 1989. Between 1989 and 1990, Perrella taught several courses, including watercolor, portraiture, pastels and oil painting, sculpture, and children's workshops.

In August, 1990, however, the plaintiff terminated Perrella's services. Subsequently, Perrella filed for unemployment compensation benefits. The plaintiff contested Perrella's claim, arguing that she had been employed as an independent contractor. The named defendant, the administrator of the act (administrator), applying General Statutes § 31-222 (a) (1) (B) (ii),[4] found Perrella to be an employee of the plaintiff and thus eligible for unemployment compensation benefits. The plaintiff appealed the administrator's decision to an appeals referee, who determined that an employment

---

[1] General Statutes § 31-222 (a) (1) (B) provides in relevant part: "Any service performed . . . after December 31, 1977, including service in interstate commerce, by . . . (ii) any individual who, under either common law rules applicable in determining the employer-employee relationship or under the provisions of this subsection, has the status of an employee. Service performed by an individual shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (III) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . ."

relationship existed because, pursuant to § 31-222 (a) (1) (B) (ii) (II), the plaintiff's art courses were within its "usual course of business."[5] After unsuccessful appeals to the board and then to the Superior Court,[6] the plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

We first consider the appropriate standard of review for the question presented. "To the extent that an administrative appeal, pursuant to General Statutes § 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review. The court must not retry facts nor hear evidence. . . . If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. . . ." (Citations omit-

---

[5] In his decision, the appeals referee determined in relevant part: "The museum seeks to distance itself from the art courses through a claim that these courses are not the usual work of a museum. It, however, is unsuccessful.

"The museum began a program of art study prior to those which the claimant taught. It determined a need within the community and responded. These then became part of the museum's normal business as they are offered continually to the public. Other evidence is supplied by the course offerings. Members are provided a discounted fee. This is obviously to encourage membership, a fee situation. This furthers the museum's program and mission and closely ties the art courses to the museum."

[6] The board concluded that the plaintiff failed to satisfy any of the prongs of the ABC test provided in § 31-222 (a) (1) (B), discussed hereinafter. Because we conclude, like the trial court, that prong B of the test has not been satisfied, we need not reach the question of whether the board's additional determinations with respect to prongs A and C were correct.

ted.) *United Parcel Service, Inc.* v. *Administrator*, 209 Conn. 381, 385–86, 551 A.2d 724 (1988). In this case, therefore, we must determine whether, in light of the evidence presented, the board's finding that the provision of art courses was within the plaintiff's usual course of business was unreasonable, arbitrary or an abuse of discretion.

An individual may receive unemployment compensation benefits if he or she was an "employee" within the meaning of the act. In addition to defining the employer-employee relationship pursuant to the common law, § 31-222 (a) (1) (B) provides that individuals who perform services for others are presumed to be employees, unless the recipient of the services (enterprise) satisfies the statutory exclusion, which is popularly known as the "ABC test." In order for an enterprise to demonstrate that an individual was not an employee, and that the enterprise therefore has no liability for unemployment taxes under the act, the enterprise must prove that the individual satisfies each of the three prongs of the ABC test. This test is conjunctive; failure to satisfy any one of the prongs will render the enterprise subject to the act. *Latimer* v. *Administrator*, 216 Conn. 237, 247, 579 A.2d 497 (1990). Under the ABC test, an individual will *not* be considered an employee if: "[A] such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; *and* [B] such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; *and* [C] such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service per-

formed . . . ." (Emphasis added.) General Statutes § 31-222 (a) (1) (B) (ii) (I) (II) and (III).

At issue in this appeal is prong B of the test: whether the provision of art courses falls outside the plaintiff's "usual course of business."[7] Resolution of this question requires that the phrase "usual course of business" be defined. This court has not previously defined this phrase expressly for the purposes of unemployment compensation. See *Daw's Critical Care Registry, Inc.* v. *Dept. of Labor*, 42 Conn. Sup. 376, 401–402, 622 A.2d 622 (1992), aff'd, 225 Conn. 99, 622 A.2d 518 (1993) (characterizing Connecticut precedent relating to prong B of ABC test as limited). Nevertheless, we find guidance in the plain language of the statute and the precedents of those states that have analyzed the meaning of this term.

In making our determination, we take as our starting point the fact that the act is remedial and, consequently, should be liberally construed in favor of its beneficiaries. *Taminski* v. *Administrator*, 168 Conn. 324, 328, 362 A.2d 868 (1975). Indeed, the legislature underscored its intent by expressly mandating that the act "shall be construed, interpreted and administered in such manner as to presume coverage, eligibility and nondisqualification in doubtful cases." General Statutes § 31-274 (c).

Our analysis commences with a review of the text of the act. "In interpreting the language of a statute, the words must be given their plain and ordinary meaning and their natural and usual sense unless the context indicates that a different meaning was intended. . . .

---

[7] Prong B is also satisfied if it is proven, in the alternative, that the service "is performed outside of all the places of business of the enterprise for which the service is performed . . . ." General Statutes § 31-222 (a) (1) (B) (ii) (II). The plaintiff does not make this claim because Perrella's services were performed on-site at the museum.

When the language is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. . . . Indeed, [a] basic tenet of statutory construction is that when a statute . . . is clear and unambiguous, [generally] there is no room for construction. . . ." (Citations omitted; internal quotation marks omitted.) *Oller* v. *Oller-Chiang*, 230 Conn. 828, 848, 646 A.2d 822 (1994).

First, it must be determined for whose "business" the service was performed—that is, for museums in general or specifically for the business of the plaintiff's museum. The plaintiff focuses on that which is outside the usual course of business for museums generally. It argues that, because the dictionary defines "museum" as "an institution devoted to the procurement, care, and display of objects of lasting interest or value"; Webster's Third New International Dictionary; art courses are outside the usual course of its business. This argument, however, ignores the plain language of prong B, which requires inquiry into "*the* business for which the service is performed . . . ." (Emphasis added.) General Statutes § 31-222 (a) (1) (B) (ii) (II). Prong B does not refer to the type of business, but, rather, to the specific business activities engaged in by the enterprise. Accordingly, with respect to this prong, we examine the particular activities engaged in by the plaintiff.

We next define the term "usual."[8] The plaintiff argues that "usual" does not mean "if you do it, it is within your usual course of business." We agree. To define the term in such a manner would include every relationship, including bona fide independent contractors, within the purview of the act. Indeed, the administrator does not

---

[8] The term "usual" is defined as "such as accords with usage, custom, or habit: of the character or amount in common use . . . commonly or ordinarily employed . . . such as occurs in ordinary practice or in the ordinary course of events." Webster's Third New International Dictionary.

argue for such a definition. Rather, the administrator asserts, and we agree, that "usual," in accordance with its common usage, simply means that an activity is performed by the enterprise on a regular or continuous basis. In the terms of § 31-222 (a) (1) (B) (ii) (II), if the activity is not performed on a regular or continuous basis, then the employer has satisfied prong B because the activity is "outside the usual course of the business" of the enterprise.[9]

The plaintiff further argues that the offering of art courses was outside its "usual course of business" because the services provided by Perrella as compared to its other activities were de minimis with respect to the revenue generated from or resources devoted to the art courses. Prong B, however, does not compel an inquiry into the substantiality or extent of a particular business activity in relation to other activities con-ducted by the enterprise. We agree that the mere fact that an enterprise undertakes an activity as an isolated instance does not render that activity within its "usual course of business." If, however, an enterprise under-takes an activity, not as an isolated instance but as a regular or continuous practice, the activity will consti-tute part of the enterprise's usual course of business irrespective of its substantiality in relation to the other activities engaged in by the enterprise.

In sum, prong B requires the finder of fact to deter-mine whether the activity performed is within the "usual course of business" of the specific business at issue.

---

[9] We note that there may be some situations, for example, those involving start-up businesses or new ventures of established businesses, in which the activity in question has not been performed for a sufficient duration to be deemed to be performed on a regular or continuous basis. In such cases, a better indication of whether the activity is in the "usual course of business" may be whether the enterprise holds itself out to the public or other inter-ested entities as performing the activity. See *Hart* v. *Johnson*, 68 Ill. App. 3d 968, 976, 386 N.E.2d 623 (1979).

In our view, "usual course of business," as used in § 31-222 (a) (1) (B) (ii) (II), means that the enterprise performs the activity on a regular or continuous basis, without regard to the substantiality of the activity in relation to the enterprise's other business activities.

This definition of "usual course of business," as used in prong B of the ABC test, is in accord with the precedent of other states. In *Bigfoot's, Inc.* v. *Board of Review of the Industrial Commission of Utah*, 710 P.2d 180, 180–81 (Utah 1985), the Supreme Court of Utah considered whether the performance of entertainers was within the usual course of business of the plaintiff's bar for the purposes of unemployment compensation. During a fifteen month period, the bar engaged numerous bands to perform at its place of business with the expectation that the bands would attract customers and increase business. Id., 181. The court reasoned that because it was "usual and customary" for the plaintiff's bar to provide entertainment, the employment of entertainers was within its "usual course of business." Id.

For slightly different reasons, in *Yurs* v. *Director of Labor*, 94 Ill. App. 2d 96, 103, 235 N.E.2d 871 (1968), the Appellate Court of Illinois concluded that an organist was an employee of a funeral home within the terms of Illinois' Unemployment Compensation Act. Between 1959 and 1962, the organist performed at nearly 285 funeral services, and the music was included in the "package price" of each service. Id., 102, 104. Concluding that the funeral home was required to pay unemployment compensation taxes, the court stated: "The frequency of the inclusion of music in the funeral services indicated that it was a usual part of the services offered by [the] plaintiffs. . . . It cannot be said under these circumstances that the furnishing of music was not in aid of and a part of [the] plaintiffs' business." Id., 104.

Accordingly, we concur in the trial court's judgment that the board did not act unreasonably or arbitrarily in concluding that the offering of art courses was within the plaintiff's "usual course of business." The referee found that the plaintiff offered the art courses on a regular and continuous basis. The record reflects the fact that the plaintiff had employed instructors to teach art courses for several years. Perrella approached the plaintiff with her resume because she knew that it offered art courses to the general public. Moreover, the plaintiff held itself out to the public as offering art courses. The plaintiff produced and distributed brochures announcing the courses, class hours, location, registration fees, and the instructors' names. Indeed, the brochure listed Perrella as a member of its "faculty," from which the general public could infer that the art courses were a regular part of the plaintiff's business. Furthermore, the appeals referee found that the plaintiff discounted the art courses for members in an effort to bolster its membership. We therefore conclude that substantial evidence exists in the record for the board to have determined that the provision of art courses was within the plaintiff's usual course of business and that the trial court properly so held.

The judgment is affirmed.

In this opinion the other justices concurred.