[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. Factual and Procedural History
Pursuant to General Statutes § 31-249b, the plaintiff, James Nardella, appeals a decision of the Employment Security Board of Review (Board) affirming the Associate Appeals Referee's decision finding the plaintiff ineligible for unemployment compensation benefits. CT Page 8907
The Board's decision was mailed to the interested parties on December 22, 1995. (Return of Record [ROR], Item 27.) The plaintiff filed a timely appeal of the Board's decision pursuant to §§ 31-249a and 31-249b on January 22, 1996.[1] In accordance with § 31-249b, the plaintiff properly filed the appeal. (ROR, Item 28.) The return of record was filed with the court on January 31, 1996. In accordance with orders of this court, Handy, J., granting all parties an extension to file their briefs, the plaintiff properly filed his brief on May 30, 1997, and the Administrator and the Town of Colchester properly filed their briefs on July 30, 1997 and June 30, 1997, respectively.
The return of record reveals the following facts. The plaintiff was employed a a police officer by the Town of Colchester from March 13, 1992 until April 25, 1995. (ROR, Item 23.) On May 21, 1994 the plaintiff arrested Philip Inkel (Inkel). (ROR, Item 23.) After Inkel brought to the police barracks he informed the plaintiff that he had left his knapsack at the scene of the arrest. (ROR, Item 27.) The plaintiff returned to the scene, retrieved the knapsack, returned to the police barracks with the knapsack, and opened the knapsack so that Inkel could identify it. (ROR, Item 27.) The knapsack contained "statements and complaints regarding the [plaintiff], police reports, which the [plaintiff] believed had been taken from the employer's premises, and personal papers, which the [plaintiff] believed had been removed from a coworker's home. (ROR, Item 27.) The plaintiff returned the knapsack and some of its contents to Inkel's home, retained several of the documents, and destroyed one document — a police report regarding a robbery. (ROR, Item 27.)
The plaintiff's conduct with regard to the contents of the knapsack was in violation of the Town of Colchester's rules and regulations manual which requires an arresting officer to inventory all property confiscated during an arrest, including stole property. (ROR, Item 23.) The plaintiff failed to follow police procedures with respect to the contents of the individual's knapsack. (ROR, Item 23.)
During an ensuing police investigation, the plaintiff told the police that he destroyed the contents of the knapsack pursuant to the request of his supervisor. (ROR, Item 23.) Subsequently, during a hearing conducted by an Appeals Referee, the plaintiff claimed that, although he thought he had destroyed CT Page 8908 the documents, he later found them in his desk, with the exception of a police report which he did destroy. (ROR, Item 27.) The plaintiff did not report this discovery to his employer. (ROR, Item 23.) The documents were evidence of a possible crime. (ROR, Item 23.)
In June, 1994, the plaintiff had a conversation with another police officer and an informant "regarding how a particular individual could be made to disappear or be killed for $10,000." (ROR, Item 23.) The individual they spoke of killing was Inkel. (ROR, Item 13.) Thereafter, the plaintiffs supervisor told the plaintiff not to have any further unnecessary contact with the informant. (ROR, Item 23.) In August, 1994, the FBI and a police sergeant informed the informant that they wanted to talk to him and have him take a polygraph test. (ROR, Item 23.) The informant thereafter contacted the plaintiff who told the informant that he did not have to take a polygraph test. ROR, Item 23.) The informant told the plaintiff that he wanted to leave town, and the plaintiff gave him $200 to do so. (ROR, Item 23.)
The plaintiff was initially suspended with pay. (ROR, Item 23.) In February 1995, however, his employer began hearings to determine whether the plaintiff's conduct with regard to the contents of the knapsack and his interactions with the informant constituted misconduct. (ROR, Item 23.) The employer suspended the plaintiff without pay on March 25, 1995. However, the police commission had not yet decided what disciplinary action should be taken and, therefore, scheduled further hearings. (ROR, Item 23.) On April 25, 1995, the plaintiff resigned from the police department before the police commission concluded its hearings. (ROR, Item 23.)
The Administrator of the Employment Security Division found the plaintiff eligible for unemployment compensation benefits on April 29, 1995 (ROR, Item 28), pursuant to a hearing conducted on April 18, 1995. Notice of the hearing was sent to the Town of Colchester on April 3, 1995. (ROR, Item 2.) The Town of Colchester filed a timely appeal to the Appeals Referee on May 5, 1995. (ROR, Item 4.) The Appeals Referee scheduled a hearing for June 28, 1995. (ROR, Item 6.) Notices of the hearing were mailed to the plaintiff and the Town of Colchester on June 12, 1995. (ROR, Item 6.)
The Appeals Referee reversed the Administrator's decision on September 29, 1995, finding the plaintiff ineligible for CT Page 8909 unemployment compensation benefits pursuant to General Statutes § 31-236 (a)(2)(B). (ROR, Item 23.) The Appeals Referee found that the plaintiff's conduct with regard to the knapsack constituted felonious conduct and that the plaintiff's conduct with regard to his interactions with the informant constituted repeated wilful misconduct, making the plaintiff ineligible for employment benefits. (ROR, Item 23.) The Appeals Referee properly mailed a copy of the decision and an appeals notice to the interested parties pursuant to General Statutes § 31-249e. (ROR, Item 23.)
The plaintiff filed a timely appeal of the Referee's decision with the Employment Security Board of Review on October 2, 1995, pursuant to General Statutes § 31-249. (ROR, Item 28.) The Board mailed a notice of the plaintiff's appeal to interested parties on October 12, 1995. (ROR, Item 25.)
On December 22, 1995, acting pursuant to section 31-249, the Board affirmed the Referee's decision. The (Board) mailed a copy of its decision to the interested parties on December 22, 1995, pursuant to § 31-249e. (ROR, Item 27.) The Board denied the plaintiff's request for a hearing. The Board found, despite the plaintiff's arguments to the contrary, that the plaintiff did not need a continuance of the Referee's hearing to obtain counsel because the Referee adequately assisted the plaintiff. (ROR, Item 27.) Also, the Board stated that the plaintiff was aware that he was entitled to seek legal counsel prior to the hearing, and that he would likely only be entitled to one hearing. (ROR, Item 27.) Additionally, the Board found that the Referee's decision to enter the employer's documents into the record as full exhibits was proper. (ROR, Item 27.) Affirming the Referee's decision, the Board found that the plaintiff was properly suspended for felonious conduct pursuant to § 53-153, based on his conduct with regard to the contents of Inkel's knapsack, and that such conduct precludes him. from receiving unemployment compensation benefits pursuant to § 31-236. (ROR, Item 27.) The Board did not discuss the Appeal Referee's finding repeated wilful misconduct, with regard to the plaintiff's interactions with the informant, since a finding of felonious conduct was sufficient to preclude the plaintiff from receiving unemployment compensation benefits. (ROR, Item 27.) The Board mailed a copy of its decision to the attorneys for the plaintiff and the Town of Colchester on December 22, 1995. (ROR, Item 27.)
II. Standard of Review CT Page 8910
"Judicial review of any decision shall be permitted only after a party aggrieved thereby has exhausted his remedy before the board . . . ." General Statutes § 31-248(c). "A party is aggrieved when that party is `affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision." Molnar v. Administrator, UnemploymentCompensation Act, 44 Conn. Sup. 285, 289, 685 A.2d 1157 (1995), aff'd, 239 Conn. 233, 685 A.2d 1107 (1996), citing Smith v.Planning Zoning, Board, 203 Conn. 317, 321, 524 A.2d 1128
(1987). If a plaintiff's pecuniary interest is affected by a decision of the Board of Review, that person has been aggrieved.Molnar v. Administrator, Unemployment Compensation Act, supra, 44 Conn. Sup. 289. In the present appeal, the plaintiff is aggrieved because his pecuniary interest has been affected by the Board's decision and he has exhausted his administrative remedies since his case has been decided by the Board.
"To the extent that an administrative appeal, pursuant to General Statutes § 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review." Mattatuck Museum-Mattatuck Historical Societyv. Administrator, 238 Conn. 273, 276, 679 A.2d 347 (1996). General Statutes § 31-249b states that "any finding of . . . the board shall be subject to correction only to the extent provided by section 519 of the Connecticut Practice Book [now Practice Book (1998 Rev.) § 22-9]." Practice Book § 519, now Practice Book (1998 Rev.) § 22-9, provides, "[t]he court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the board when they depend upon the weight of the evidence and the credibility of witnesses.
If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have, followed from such facts." (Internal quotation marks omitted.) MattatuckMuseum-Mattatuck Historical Society, supra, 238 Conn. 276. "Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was CT Page 8911 unreasonable, arbitrary, illegal or an abuse of discretion. " (Internal quotation marks omitted.) Id. See also Bennett v.Administrator, 34 Conn. App. 620, 626, 642 A.2d 743 (1994).
"As a general rule, [t]he application of statutory criteria to determine a claimant's eligibility for unemployment compensation under General Statutes §§ 31-235 and 31-236
involves mixed questions of fact and law in which the expertise of the administrative agency is highly relevant." United ParcelService, Inc. v. Administrator, 209 Conn. 381, 386,551 A.2d 724 (1988). "Conclusions of law reached by the referee cannot stand, however, if the. court determines that they resulted from an incorrect application of the law to the facts found or could not reasonably and logically follow from such facts. "DaSilva v.Administrator, 175 Conn. 562, 564, 402 A.2d 755 (1978).
III. Discussion
The plaintiff alleges that the decision of the Board should be reversed for three reasons: () the Board took into consideration information which was misrepresented to it by the Town of Colchester; (2) the Board erred in not granting the Petitioner an evidentiary hearing before the Board so that the plaintiff could present additional evidence or testimony; and (3) the Board concluded that the plaintiff's conduct constituted a felonious act. In his brief, the plaintiff additionally argues that he is not guilty of repeated willful misconduct and that he did not voluntarily leave his employment without job-connected cause.
Both defendants argue that this court should dismiss the plaintiff's appeal since the Board's factual and legal conclusions are reasonably drawn from the facts found. The defendants also argue that the Board was correct in refusing to grant the plaintiff an additional evidentiary hearing.
This court will address each of the plaintiff's grounds in turn.
A. Misrepresented Information
Although the plaintiff's appeal alleges that the Board took misrepresented information into consideration in reaching its decision, the plaintiff does not argue that allegation in his brief. "Analysis, rather than mere abstract assertion, is CT Page 8912 required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.)Cummings v. Twin Tool Mfg. Co., 40 Conn. App. 36, 45,668 A.2d 1346 (1996). "Where an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived." CHRO v. Truelove and Maclean, Inc. 238 Conn. 337, 344
n. 11, 680 A.2d 1261 (1996).
Accordingly, since the plaintiff did not brief his allegation that the Board considered misrepresented information, that claim is waived.
B. Evidentiary Hearing
The plaintiff argues that the Board erred in refusing to grant the plaintiff an evidentiary hearing to submit evidence which may have shown that, at the time of the appeals hearing, the employer knew that the informant had an airline ticket purchased for him by the State Police near the time of the plaintiff's contact with the informant. The plaintiff also argues that the Board erred in denying him a hearing since the employer's submission of evidence into the record during the Appeals Referee's hearing prejudiced him. The plaintiff does not explain the relevance of the alleged airline ticket nor how the employer's submission of evidence prejudiced him.
The defendants argue that the plaintiff was given ample opportunity to present evidence at the hearing before the Appeals Referee. The defendants refer to the notice; I sent to the plaintiff which advised him of the hearing before the Appeals Referee and which stated that he would likely receive only one hearing and that he must present all evidence at that hearing. (ROR, Item 6.) The defendants also cite to the Board regulations which require all parties to present their evidence at the hearing before the Appeals Referee.
General Statutes § 31-249 gives the Board discretion regarding whether to conduct a hearing or rely on the record of the Referee's hearing. General Statutes § 31-249 states "[a]t any time before the referee's decision has become final . . . any party including the administrator, may appeal therefrom to the board . . . . Such appeal to the board may be heard on the record of the hearing before the referee or the board may hearadditional evidence or testimony, provided the board shall determine what evidence shall be heard in the appeal established CT Page 8913 in accordance with the standards and criteria in regulations adopted pursuant to section 31-237g.[2] (Emphasis added). "Such appeals are heard on the record of the hearing before the referee although the board may take additional evidence or testimony if justice so requires." Finkenstein v. Administrator,192 Conn. 104, 109, 470 A.2d 1196 (1984).
The Board determined that justice did not require that the plaintiff receive a hearing before the board under Conn. Agencies Regs. § 31-237g-40. (ROR, Item 27). The plaintiff does not explain the relevance of the alleged airline ticket or how the employer's submission of evidence prejudiced him, nor how these assertions indicate that the plaintiff was unfairly denied an evidentiary hearing.
Accordingly, there is no basis for finding that the Board abused its discretion in denying the. plaintiff an evidentiary hearing.
C. Felonious Conduct
The plaintiff argues that the Board's finding that the plaintiff's actions in regard to the contents of the knapsack constituted felonious conduct is erroneous for two reasons. First, the plaintiff argues that since the Board did not find specifically that the plaintiff acted willfully and corruptly, the Board did not properly find the plaintiff guilty of felonious conduct pursuant to General Statutes § 53-153. Secondly, the plaintiff argues that the Board's finding of felonious conduct was erroneous since the Board cites no evidence in support of its conclusion that the plaintiff knew or should have known that the supervisor's directive to destroy the documents, rather than inventory them in accordance with police procedures was illegal. In response, the defendants argue that this court should affirm the Board's finding that the plaintiff engaged in felonious conduct since the Board's decision is supported by the Board's and the Referee's findings of fact, which may not be corrected by this court since the plaintiff failed to file a motion to correct the findings of the Board in accordance with Practice Book §§ 515A, now Practice Book (1998 Rev.) § 22-4. The defendants also argue that, based on the facts found, the Board logically inferred that the plaintiff acted willfully and corruptly in taking away the documents found in Inkel's knapsack.
The Administrator is correct in arguing that since the CT Page 8914 plaintiff failed to file a motion to correct the findings of the Board in accordance with Practice Book § 515A, now Practice Book (1998 Rev.) § 22-4, this court cannot review the plaintiffs factual claims. Practice Book § 515A, now Practice Book (1998 Rev.) § 22-4, provides, in relevant part, "[i]f the appellant desires to have the finding of the board corrected he or she must, within two weeks after the record has been filed in the superior court, unless the time is extended for cause by the board, file with the board a motion for the correction of the finding and with it such portions of the evidence as he or she deems relevant and material to the corrections asked for, certified by the stenographer who took it . . . ." "[T]he filing of such a motion is a condition precedent to pursue a challenge to the board's findings." Calnan v. Administrator,43 Conn. App. 779, 783, 686 A.2d 134 (1996). "Practice Book § 515A [now Practice Book (1998 Rev.) § 22-4] provides the mechanism for the correction of the board's findings." Id., 784.
Accordingly, this court will not question the factual findings of the Board, but will rather determine only whether the conclusions reached were reasonably drawn from the facts found and a correct application of the law.
General Statutes § 31-236 (a)(2)(B) provides, in part, "[a]n individual shall be ineligible for benefits . . . if, in the opinion of the administrator, he has been discharged or suspended for felonious conduct . . . ." General Statutes § 53-153 provides, in relevant part, "[a]ny person who, wilfully and corruptly, takes away, alters, mutilates or destroys any book, record, document, archive or other property in imprisoned not more than ten years." "An offense for which a person may be sentenced to a term of imprisonment in excess of one year is a felony." General Statutes § 53a-153 provides, in relevant part, "[a]ny person who, wilfully and corruptly takes away alters, mutilates or destroys any book, record, document, archive or other property in the possession or custody or under the control of any institution, board, commission, department or officer of the state or any county or municipality or court, . . . shall be imprisoned not more than ten years." "An offense for which a person may be sentenced to a term of imprisonment in excess of one year is a felony." General Statutes § 53a-25 (a). The Board found that the plaintiffs conduct with respect to the contents of the knapsack constituted felonious conduct under § 53-153. (ROR, Item 27.) CT Page 8915
Specifically, the Board found that the plaintiff destroyed at least the police report found in Inkel's knapsack, while "it was in the custody and under the control of the [plaintiff], an agent of the subject employer, which is a municipality." The Board found that the circumstantial evidence presented was sufficient to prove that the plaintiff intended to "take away" the remaining documents. Such evidence included the fact that the plaintiff did not inventory any of the documents, as required. The Board found that it was especially important for the plaintiff to inventory the evidence because the documents may have been obtained as the result of criminal acts. The Board found the fact that the plaintiff was directed by his supervisor to destroy the documents irrelevant because the plaintiff knew or should have known that to do so was illegal.
In State v. Kari, 26 Conn. App. 286, 292, 600 A.2d 1374
(1991), appeal dismissed, 222 Conn. 539, 608 A.2d 92 (1992), the appellate court affirmed the conviction of a defendant under §53-153 because the circumstantial evidence showed that he acted with a dishonest purpose, and therefore acted "wilfully and corruptly" when he destroyed a document during his employment with the board of education. The court stated that a defendant's state of mind "generally must be based on circumstantial evidence because direct evidence of a defendant's state of mind is rarely available." Id.
The factual findings of the Board support the Board's conclusion that the plaintiff's conduct constituted felonious conduct pursuant to General Statutes § 53-153. Further, the Board could reasonably find that a police officer who took into his possession a document and then destroyed it, rather than following procedures requiring the inventory of such evidence, acted willfully and corruptly. Also, the Board's conclusion that the plaintiff knew or should have known that his supervisors directive to destroy the evidence was illegal, was reasonable considering the plaintiff was a police officer. The Board properly considered circumstantial evidence in reaching its conclusions. See State v. Kari, supra, 26 Conn. App. 292.
Accordingly, the Board's finding that the plaintiff engaged in felonious conduct was proper.
D. Willful Misconduct CT Page 8916
Although the Board did not address the issue of the plaintiff's contact with the informant, the plaintiff argues that his contact with the informant does not constitute willful misconduct.
The finding of the Board in the present case was that the plaintiff was not entitled to an additional evidentiary hearing, and that the plaintiff was not entitled to unemployment compensation benefits because his conduct with regard to the contents the knapsack constituted felonious conduct. The Board did not of the knapsack constituted felonious conduct. The board did not reach the issue of whether the plaintiff engaged in willful misconduct with regard to his contact with the informant because a finding of felonious conduct was sufficient to render the plaintiff ineligible for unemployment benefits. Accordingly, the plaintiffs arguments that he did not engage in wilful misconduct with regard to his contact with the informant are irrelevant for purposes of this appeal.
E. Voluntarily Leaving Job for a Job-Connected Purpose
Lastly, the plaintiff argues that although he voluntarily left his job, he did so for a job-connected purpose, since the anticipated costs of defending himself during the employers hearings were beyond his means. The plaintiff does not discuss the relevance of this argument.
This court finds that whether or not the plaintiff voluntarily left his job for a job-connected purpose is irrelevant for purposes of this appeal.
IV. Conclusion
This court finds that the Board did not abuse its discretion in denying the plaintiff an evidentiary hearing. Also, the Board's finding that the plaintiff's conduct constituted felonious conduct was based on ample evidence and a correct application of the facts to General Statutes § 53-153. Accordingly, the plaintiff's appeal is dismissed.
Kenefick, J.