[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from a decision of the board of review of the employment security appeals division denying a claim for unemployment compensation.
Facts
On August 22, 1997, the plaintiff, Robert E. Baldwin, filed an application for unemployment benefits claiming that he was forced to terminate his employment with Marty Gilman, Inc. due to intolerable circumstances. On September 5, 1997, the administrator denied Baldwin's claim on the ground that Baldwin voluntarily left "for reasons which did not constitute good cause attributable to [his] employer."
Baldwin filed an appeal to an appeals referee from the administrator's decision and on October 20, 1997, the referee conducted a de novo hearing and made findings of fact. In a decision, dated October 22, 1997, the referee affirmed the administrator's denial of benefits and determination that Baldwin "voluntarily left suitable work without good cause attributable to [his] employer."
Thereafter, on November 10, 1997, Baldwin filed an appeal to the board of review of the employment security appeals division CT Page 4624 (the board) from the referee's decision. The board adopted the referee's findings of fact and affirmed the referee's decision on December 24, 1997. Subsequently, on January 23, 1998, Baldwin filed a motion to reopen the board's decision, which was denied by the board on March 5, 1998. Baldwin now appeals to the superior court from the decision of the board, pursuant to General Statutes § 31-249b, on the ground that the board erred in affirming the referee's decision that he voluntarily left suitable employment without good cause attributable to his employer.
The board adopted the following factual findings relevant to this appeal. Baldwin worked for Marty Gilman, Inc. as a purchasing agent from November 5, 1996 to July 10, 1997. See referee's findings of fact. On July 10, 1997, Baldwin "quit his job because he felt physically threatened by the employer's plant supervisor, Geoffrey Gilman, on that date." Id. Earlier that day, Gilman and Baldwin had become involved in an argument regarding whether Baldwin had requested that an order of paint be shipped within two days instead of the usual four days that an order took to be shipped. Id. During the argument, Gilman yelled at Baldwin: "You've lied and played games. Pick up your things and get out of here," in front of twenty to thirty other employees. Id. Neil Gilman, the company president (the president), interrupted the argument and told Baldwin and Gilman to calm down. Id. The president then instructed Baldwin to go for a walk until he could return to work. Id.
After Baldwin returned to work that day, the following events took place. Upon Baldwin's return, Gilman apologized to him. Id. Later, Baldwin found a note from Shirley Gilman, the vice-president of the company (the vice-president), stating that: "We can only say that we regret all this `talk' that's been happening. We are pleased with the work that you have been doing. Let's take time, at the end of the day, to try to resolve this difficulty." Id. Baldwin worked approximately three and a half hours and then spoke to the vice-president about Gilman. Id. The vice-president acknowledged that Gilman had a temper, but assured Baldwin that their differences could be resolved. Id.
Baldwin then met with the president pursuant to the vice-president's suggestion. Id. At that time, the president reminded Baldwin that orders for certain material had to be placed on the day requested. Id. Baldwin asked if the president intended to discipline Gilman. Id. When the president said no because he did not want to take sides, Baldwin announced that he CT Page 4625 was terminating his employment. Id.
Prior to July 10, 1997, Baldwin had informed the president that Gilman's repeated questions to him regarding whether he ordered certain materials was causing him distress. After Baldwin complained to the president, Gilman stopped questioning Baldwin about the orders.[1]
Standard
"To the extent that an administrative appeal, pursuant to General Statutes § 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review. The court must not retry the facts nor hear evidence. (Citation omitted; internal quotation marks omitted.)Mattatuck Museum-Mattatuck Historical Society v. Administrator,238 Conn. 273, 276, 679 A.2d 347 (1996). See also Practice Book § 22-9. A "trial court does not try the matter de novo." AcroTechnology v. Administrator, 25 Conn. App. 130, 134, 593 A.2d 154
(1991). The court is bound by the finding of facts of the board. See Robinson v. Unemployment Security Board of Review,181 Conn. 1, 4, 434 A.2d 293 (1980). "If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion . . . ." (Citation omitted; internal quotation marks omitted.) MattatuckMuseum-Mattatuck Historical Society v. Administrator, supra,238 Conn. 276.
Discussion
Baldwin challenges several determinations of the board in connection with its ultimate conclusion that Baldwin voluntarily left suitable work without good cause attributable to his employer.[2] Initially, Baldwin argues that he did not voluntarily leave his employment. Rather, he contends that he was discharged when Gilman stated: "You've lied and played games. Pick up your things and get out of here." Baldwin further argues that because he was not discharged for any of the conduct set forth in General Statutes § 31-236 (a)(2)(B), he is eligible to receive unemployment compensation.[3]
CT Page 4626
The board found that Gilman apologized to Baldwin on July 10, 1997, and that this apology was elicited by the president. See decision of the board. Additionally, it found that the vice-president informed Baldwin that the company was happy with his work and that they would take time to resolve the problems Baldwin had with Gilman. See referee's findings of fact. Moreover, the board's findings of fact indicate that the president met with Baldwin at the end of the work day in order to address Baldwin's concerns. Id. Most significant, however, is the fact that Baldwin returned to work for approximately three and a half hours, after Gilman made the statement. Id. Thus, the court concludes that the board's determination that Baldwin left voluntarily was not unreasonable, arbitrary, illegal or an abuse of its discretion.
Baldwin further argues that the board erred in determining that he did not, voluntarily leave his employment for good cause attributable to his employer. Baldwin argues that he left work for good cause attributable to his employer because (1) he was subjected to continual verbal abuse by Gilman and (2) he made reasonable attempts to remedy the situation as further attempts to address the problem would have been futile under under Regs., Conn. State Agencies § 31-236-22 (a).[4]
Section 31-236 (a)(2)(A) of the General Statutes provides, in pertinent part, that "[a]n individual shall be ineligible for benefits . . . if, in the opinion of the administrator, he has left suitable work voluntarily and without good cause attributable to the employer. . . ." The corresponding regulation cited to by Baldwin, § 31-236-22 (a)(1)(H), provides, in pertinent part, that "[t]o determine that an individual voluntarily left suitable work for good cause attributable to the employer, the Administrator must find, with respect to working conditions, that. . . the individual was subjected to a pattern of verbal abuse which would be offensive to a reasonable person by a fellow employee or his supervisor or any other authorized representative of his employer. . . ." The regulation further requires that the administrator find that the individual expressed his dissatisfaction regarding the working condition to his employer and unsuccessfully attempted to resolve the condition before leaving his employment. Regs., Conn. State Agencies § 31-236B-22 (a)(2).
In order to establish good cause under § 31-236 (a)(2)(A), Baldwin must demonstrate that (1) he left his employment for CT Page 4627 reasons which would impel the ordinary prudent person to leave and (2) there was no reasonable alternative to termination. SeeAcro Technology, Inc. v. Administrator, supra, 25 Conn. App. 135. The burden is on Baldwin to prove that "his basis for leaving employment [was] objectively reasonable and that no reasonable alternative to termination [existed]." Id. Additionally, with respect to Baldwin's claim that a pattern of verbal abuse gave him good cause attributable to his employer to voluntarily leave his employment, Baldwin carries the burden of demonstrating that he (1) informed his employer of the problem and (2) attempted to remedy the problem. See Regs., Conn. State Agencies § 31-236-22
(a)(2).
The board concluded that Baldwin did not establish that he voluntarily left work for good cause attributable to his employer on the grounds that Baldwin did not explore reasonable alternatives to resignation, and did not afford the president a reasonable opportunity to address his concerns. See decision of the board. The board's factual findings support these conclusions. As noted, the board found that Gilman apologized for his behavior and that said apology was elicited from the president. Id. The board further found that on the day Baldwin resigned, the vice-president had informed Baldwin that the company was pleased with his work and that they would try to resolve his differences with Gilman. See referee's findings of fact. Additionally, the findings of fact reveal that the president attempted to speak with Baldwin regarding his concerns and that when Baldwin had complained to the president about Gilman's behavior in the past, the president had remedied the situation. See decision of the board, referee's findings of fact.
Based on these facts, the board properly concluded that Baldwin failed to explore other reasonable alternatives as opposed to resigning and that Baldwin's impulsive resignation, without advance notice, deprived the president of the opportunity to address the situation between Baldwin and Gilman. As the board's factual findings reveal that the company attempted to address Baldwin's concerns, the court concurs with the board's conclusion that Baldwin had no reasonable basis for believing that attempts to remedy the situation would be futile. Accordingly, Baldwin has failed to sustain his burden of proving that (1) no reasonable alternative to termination existed under § 31-236 (a)(2)(A) and (2) he made appropriate efforts to remedy the situation under Regs., Conn. State Agencies § 31-236-22 (a)(2). Therefore, Baldwin's claim that he left for good cause attributable to his employer based on Gilman's verbal abuse must fail. CT Page 4628
The board correctly applied its findings of fact to the law and, therefore properly determined that Baldwin was ineligible for unemployment compensation under § 31-236 (a)(2)(A). Accordingly, the board's decision cannot be found to be unreasonable, arbitrary, illegal, or an abuse of its discretion.
Conclusion
For the reasons herein stated, Baldwin's appeal is dismissed.
It is so ordered.
By the court,
Higgins, J.