[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On June 4, 1997 Thomas F. Walsh was required by his employment with the State of Connecticut Department of Transportation (hereinafter CDOT) to submit to random drug and alcohol testing. The urine specimen Walsh provided was determined to have been adulterated by nitrites. Mr. Walsh requested that his urine specimen be subjected to confirmatory testing. CDOT refused to do additional testing and terminated Walsh's employment. Walsh was terminated from his employment.; Walsh applied for unemployment compensation. CDOT objected because Walsh had been disqualified under state or federal law from performing work for which he was hired as a result of a drug or alcohol testing program mandated by and conducted in accordance with the relevant law. See §§ 49 C.F.R. § 382.211
(1997). As such CDOT claimed Walsh was not entitled to benefits pursuant to C.G.S. § 31-236 (a) (14). The employment security board of review's (board) decision denied Walsh's claim for unemployment compensation benefits. Mr. Walsh now appeals pursuant to C.G.S. 31-249 (b).
In this appeal Walsh challenges the board's decision on the grounds that it (1) improperly placed the burden of proof on Walsh as the claimant and (2) the board failed to conclude that the CDOT violated federal law in refusing to perform a confirmatory test on his urine specimen. Prior to addressing these issues the court will discuss the scope of its review and the salient facts derived from the record.
Scope of Review
"[A]ppeals from the board to the Superior Court are specifically exempted from governance by General Statutes §§ 4-166 et seq., the Uniform Administrative Procedure Act. All appeals from the board to the Court are controlled by §§ 31-249b." Calnan v. AdministratorUnemployment Compensation Act, 43 Conn. App. 779, 783, 686 A.2d 134
(1996). Judicial review of any decision shall be allowed only after an aggrieved party has exhausted his or her remedies before the board. General Statutes §§ §§ 31-248 (c) and 31-249a (c). Appeals within the unemployment compensation system must be taken in a timely fashion or they are to be dismissed. Gumbs v. Administrator, 9 Conn. App. 131, 133,517 A.2d 257 (1986).
"To the extent that an administrative appeal, pursuant to General CT Page 1977 Statutes §§ 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review." (Internal quotation marks omitted.) Mattatuck Museum-Mattatuck HistoricalSociety v. Administration, 238 Conn. 273, 276, 679 A.2d 347 (1996). See also Practice Book §§ 22-9 (formerly §§ 519). "The court must not retry the facts nor hear evidence." (Internal quotation marks omitted.)Mattatuck Museum-Mattatuck Historical Society, supra, 238 Conn. 276. See also United Parcel Service, Inc. v. Administrator, 209 Conn. 381, 385,551 A.2d 724 (1988); Burnham v. Administrator, 184 Conn. 317, 321,439 A.2d 1008 (1981)." If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts." (Internal quotation marks omitted.) Mattatuck Museum-MattatuckHistorical Society, supra, 238 Conn. 276. "Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. " (Internal quotation marks omitted.) Church Homes, Inc. v. Administrator,Unemployment Compensation Act, 250 Conn. 297, 303-04, 735 A.2d 805
(1999).
"As a general rule, [t]he application of statutory criteria to determine a claimant's eligibility for unemployment compensation under General Statutes §§ §§ 31-235 and 31-236 involves mixed questions of fact and law in which the expertise of the administrative agency is highly relevant." (Internal quotation marks omitted.) United ParcelService, Inc. v. Administrator, supra, 209 Conn. 386. Questions involving matters of statutory construction are questions of law on which the agency's view is entitled to deference but is not dispositive. SeeDaSilva v. Administrator, 175 Conn. 562, 564, 402 A.2d 755 (1978). See also Bridgeport Metal Goods Mfg. Co. v. Administrator, 2 Conn. App. 1,3, 479 A.2d 329 (1984).
Facts and Posture of the Appeal
Thomas F. Walsh was employed as a full-time Maintainer II with the CDOT. CDOT assigned Walsh to the motor vehicle garage in Vernon, Connecticut. Walsh was to required maintain a commercial driver's license and was subject to federally mandated drug testing. (Emphasis added.) Walsh had previously been suspended for a positive drug test and subsequently was subjected to a series of successful follow-up tests. On June 4, 1997, Walsh was asked to submit to a random drug test. The test was conducted pursuant to the federal regulations, 49 C.F.R. § 40.
On June 4, 1997, Walsh was taken from his work location to the CT Page 1978 collection site. He was accompanied to the test site by one of his supervisors. At the collection site he was asked for identification and to turn his pockets inside out. He was administered a breathalyser test. Thereafter Walsh was directed to a bathroom where he was observed washing his hands. The testing technician then provided Walsh with a urine sample bottle and the bathroom door was closed to provide Walsh with privacy as he provided the specimen. Upon completion of his producing the sample he knocked on the bathroom door and handed the specimen to the technician. Mr. Walsh watched the technician divide the sample into two vials, seal the vials and then place the vials into a plastic pouch. Mr. Walsh signed paperwork indication that he had observed the handling of the specimen. Other than the period of time that the bathroom door was closed for Walsh's privacy he was at all times accompanied by the testing technician.
Walsh's urine sample tested negative for prohibited substances, but tested positive for nitrate, a chemical which is used to adulterate urine samples for the purposes of drug testing. Mr. Walsh denied that he adulterated his urine sample. CDOT refused Walsh's request for a confirmatory test and discharged him on June 27, 1997.
Analysis
 A.
Mr. Walsh's first claim is that the board improperly shifted the burden of proof from the employer to the claimant. It is the employers burden, when objecting the granting of unemployment benefits, to show that the employee's is disqualified from receiving benefits based upon certain specified statutory grounds. In this case; the CDOT claims that Walsh in not eligible for benefits pursuant to 31 C.G.S. 236(a) (14). This section provides:
 An individual shall be ineligible for benefits. . . . (14) (i)f the administrator finds that the individual has been discharged or suspended because the individual has been disqualified under state or federal law from performing the work for which such individual was hired as a result of a drug or alcohol testing program mandated by and conducted in accordance with such law . . ."
The evidence before the board and relied upon the board showed that the test had been administered in accordance with federal protocols. Those protocols were designed to secure the integrity of the testing procedure and are detailed in the steps required to achieve that result. See CT Page 197949 C.F.R. § 40.25 (1997). At all times during the handling of the sample Mr. Walsh had the opportunity to observe the conduct of the other individual splitting the specimen into two vials and sealing the vials in a mailing pouch. Once in the mailing pouch the vials were transmitted to the testing laboratory. The laboratory is required to document whether the seals have been damaged or broken prior to testing. Mr. Walsh signed forms indicating that the testing protocols had been followed. Further he never testified that he saw the individual at the testing facility mishandle or adulterate the sample. The only time that the sample in the possession of one individual was when Mr. Walsh was providing the sample.
Some additional facts are required to properly analyze the claimant's position. Mr. Walsh claimed that he had a personal relationship with the technician who processed his urine specimen on July 4, 1997. He claimed their relationship had terminated the night before the sample was taken and positive that the technician adulterated his specimen. The board found the credibility of these claims were undercut by Walsh's failure to object to the technician participating in the testing process on June 4, 1997, and by his failure to raise these claims to the medical review officer or at the preliminary fact finding hearing. The first time Walsh raised this claim was before the Referee on September 23, 1997.
While the employer has the burden of proof the law does not make this an impossible burden to meet. The board was entitled to infer from the employers proof of compliance with the federal testing procedures that adulteration occurred while this sample was in sole control of the claimant or in his presence with his acquiescence. The board reasonably rejected his claimant's speculations as to alternative sources of the nitrites.
 B.
Mr. Walsh asserts that he was entitled to have the second vial of his June 4, 1997 urine specimen tested by different laboratory. Whether or not he is entitled to confirmatory test involves an interpretation of federal regulations that govern the testing procedures.
Congress delegated to the federal Secretary of Transportation the authority to "prescribe regulations that establish a program requiring mass transportation operations . . . to conduct preemployment, reasonable suspicion, random, and post-accident testing of mass transportation employees responsible for safety-sensitive functions (as decided by the Secretary) for use of a controlled substance in violation of law or a United States Government regulation. . . ." 49 U.S.C. § 5331
(b)(1)(A) (1998). This mandate extends to the implementation of recurring testing of mass transportation employees if the Secretary deems it CT Page 1980 appropriate "in the interest of safety." 49 U.S.C. § 5331 (b)(1)(B) (1998). Finally, the statute delineates parameters to aid the Secretary, in promulgating drug testing regulations. 49 U.S.C. § 5331 (d) (1998).
The Secretary of Transportation acting through FHWA promulgated regulations governing all individuals who operate commercial vehicles in commerce. 49 C.F.R. § 382.101 (1997). Section 382.105 provides: "Each employer shall ensure that all alcohol or controlled substances testing conducted under this part complies with the procedures set forth in part 40 of this title." 49 C.F.R. § 382.105 (1997).
Under federal regulations a positive test is one which reveals a prohibited level of a controlled substance or alcohol. See49 C.F.R. § 382.107. An adulterated test result falls with the definition a "refuse to submit." 49 C.F.R. § 382.107 provides that a "refusal to test includes: outright refusal to submit to a test; failure to provide sufficient quantities of . . . urine . . .; engaging inconduct that clearly obstructs the testing process; or leaving the scene of an accident without a valid reason before tests are conducted and without notifying a supervisor where he/she can be reached to be made available for testing." (Emphasis added.)
It is clear that if the Walsh's first test results had come back with a positive result, as opposed to an adulterated result, that Walsh would have been entitled to have a confirmatory test performed. See49 C.F.R. § 40.25 (f) (10) (ii) (E) (1997). In this case, because the test results came back as "adulterated" or a "refuse to submit" the board determined that Walsh was not entitled to a confirmatory test.
In a case interpreting similar testing regulations applied to railroad workers the court concluded that confirmatory testing of an adulterated sample was not required. In Smeltzer v. Slater, 93 F. Sup.2d 1095 (C.D. Cal. 2000), the district court held that "no such procedure is provided if the sample is considered by the testing laboratory to be adulterated, and DOT issued a memorandum stating that a retest of the alleged adulterated sample is not allowed." Smeltzer v. Slater, 93 F. Sup.2d 1095,1097 (C.D. Cal. 2000).
The determinate that Mr. Walsh is not entitled to confirmatory testing under the federal regulations is buttressed by the subsequent revision of those regulations. On December 19, 2000 the federal DOT published revisions of the drug testing regulations. One of the more significant changes involved an expansion of employees' rights with respect to confirmatory testing. Section 49 C.F.R. § 40.171 (2000) affords the employee with the opportunity to request a confirmatory test of the split CT Page 1981 specimen if the initial sample is determined to be positivity oradulterated. Section 0.171(a) (2000) provides in relevant part that "[a]s an employee, when the MIRO has notified you that you have a verified positive drug test or refusal to test because of adulteration or substitution, you have 72 hours from the time of the notification to request a test on the split specimen. " 49 C.F.R. § 40.171 (a) (2000). Upon receipt of a timely request, the MIRO must "immediately provide written notice to the laboratory that tested the primary specimen, directing the laboratory to forward the split specimen to a second HHS-certified laboratory." 49 C.F.R. § 40.17 1(c) (2000). The CDOT concluded that this additional right comports with fairness and due process. Department of Transportation Procedures for Transportation Workplace Drug and Alcohol Testing Programs; Final Rule,65 Fed. Reg. 79,480 (December 19, 2000) (codified at 49 C.F.R. pt. 40).
In explaining the rational underlying the revisions, the CCDOT confirmed the agency's existing practice of prohibiting confirmatory tests for adulterated samples. In examining the alternatives for dealing with adulterated urine samples, the CCDOT stated that the "first option would have continued the Department's current policy of prohibiting split specimen testing in these cases." Department of Transportation Procedures for Transportation Workplace Drug and Alcohol Testing Programs; Final Rule, 65 Fed. Reg. 79,478 (December 19, 2000) (codified at 49 C.F.R. pt. 40).
For the above reasons, the board properly concluded that the 1997 regulations did not entitled Mr. Walsh to a confirmatory test. The question remains whether the 2000 regulations should be applied in a retroactive manner to this case.
 C.
The United States Supreme Court has articulated a presumption against retroactive application of legislative rules and administrative regulations. "Retroactivity is not favored by the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. . . . By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless the power is conveyed by Congress in express terms. . . . Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant." (Citations omitted.) Bowen v. Georgetown University Hospital, 488 U.S. 204,208-09, 109 S.Ct. 468, 102 L.Ed.2d 493 (1998); see also Landgraf v. USIFilm Products, 511 U.S. 244, 272, 114 S.Ct. 1483, 128 L.Ed.2d 229
CT Page 1982 (1994) (reiterating the presumption against retroactive application of congressional enactments and administrative regulations).
The presumption applies in equal force to both legislative and interpretative rules. The Court of Appeals for the District of Columbia explained that "interpretive rules, no less than legislative rules, are subject to Georgetown Hospital's ban on retroactivity." Health Ins.Association of America, Inc. v. Shalala, 23 F.3d 412, 423 (C.A.D.C. 1994). The court distinguished between legislative and interpretive rules by considering the "existence or non-existence of legal duties or rights." American Mining Congress v. Mine Safety HealthAdministration, 995 F.2d 1106, 1110 (C.A.D.C. 1993).
"A statute or legislative rule that actually establishes a duty or a right is likely to be relatively specific (and the agency's refinement will be interpretive), whereas an agency's authority to create rights and duties will typically be relatively broad (and the agency's actual establishment of rights and duties will be legislative)." Id. "The dividing line . . . is whether implementing regulations are necessary in order to make a statutory scheme fully operative: [A] rule supplying [necessary legislative] action will be legislative no matter how grounded in the agency's understanding of what the statute requires, and an interpretation that spells out the scope of an agency's or regulated entity's pre-existing duty . . . will be interpretive, even if . . . it widens the duty even beyond the scope allowed to the agency underChevron. . . ." (Internal quotation marks omitted.) Health Ins.Association of America, Inc. v. Shalala, supra, 23 F.3d 423.
There are essentially four queries the court should make in determining whether a rule is legislative or interpretive: "(1) whether in the absence of the rule there would not be an adequate legislative basis for the enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule. If the answer to any of these questions is affirmative, we have a legislative, not an interpretive rule." American Mining Congress v. Mine Safety HealthAdministration, supra, 995 F.2d 1112.
The CDOT regulations in question constitute a legislative rule. The regulations are published in the Code of Federal Regulations at 49 C.F.R. § 40. Title 49 mandates that the CDOT promulgate regulations to carry out its duty of administering drug and alcohol tests. 49 U.S.C. § 5331 (1998). Additionally, Congress afforded the CDOT general legislative authority to "carry out the duties and powers of CT Page 1983 the Secretary." 49 U.S.C. § 322 (a) (1998).
The 2000 revisions do not apply retroactively to Walsh's test results. Title 49 does not explicitly delegate to the Secretary the power to enact retroactive regulations. Further it is clear from the above discussion that the revisions substantially alter the rights and duties of the employer and employee and, therefore, application of the revised regulations to the present case would be inappropriate.
Conclusion
For the above reasons, the appeal of the claimant Thomas F. Walsh is without merit and is denied.
Cosgrove, J.