## Evelyn Bennett *v.* Administrator, Unemployment Compensation Act
### (12347)

Foti, Lavery and Freedman, Js.

Argued February 23—decision released June 7, 1994

*Thomas P. Clifford III,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellant (defendant).

*Thomas B. Pursell,* for the appellee (plaintiff).

FREEDMAN, J. The defendant, the administrator of the Unemployment Compensation Act, appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Evelyn Bennett, and remanding the case to the employment security board of review for a hearing to determine the amount of benefits to be awarded. On appeal, the administrator claims that the trial court improperly construed General Statutes § 31-236 (a) (2) (A) (ii)[1] to eliminate the requirement that Bennett must be available for work in order to be eligible for benefits under General Statutes § 31-235 (a) (2).[2] We reverse the judgment of the trial court.

[1] General Statutes § 31-236 provides in pertinent part: "(a) An individual shall be ineligible for benefits . . . (2) (A) if, in the opinion of the administrator, he has left suitable work voluntarily and without sufficient cause connected with his work, until such individual has earned at least ten times his benefit rate, provided whenever an individual voluntarily leaves part-time employment under conditions which would render him ineligible for benefits, his ineligibility shall be limited as provided in subsection (b) of this section, if applicable, and provided further, no individual shall be ineligible for benefits if he leaves suitable work (i) for sufficient cause connected with his work, including leaving as a result of changes in conditions created by his employer, or (ii) to care for a seriously ill spouse or child, or parent domiciled with the individual, provided such illness is documented by a licensed physician, or (iii) due to the discontinuance of transportation, other than his personally owned vehicle, used to get to and from work, provided no reasonable alternative transportation is available . . . ."

[2] General Statutes § 31-235 (a) provides: "An unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found that (1) he has made claim for benefits in accordance with the provisions of section 31-240 and has registered for work at the public employment bureau or other agency designated by the administrator within such time limits, with such frequency and in such manner as the administrator may prescribe, provided failure to comply with this condition may be excused by the administrator upon a showing of good cause therefor; (2) except as provided in subsection (b) of this section, he is physically and mentally able to work and is available for work and has been and is making reasonable efforts to obtain work, provided he shall not be considered to be unavailable for work solely because he is attending a school, college or university as a regularly enrolled student during his separation from employment, within the limitations of subdivision (a) (6) of section 31-236, and provided further, he shall not be considered to be lacking in his efforts to obtain work if, as a student, he restricts such efforts to employment which does not

The following facts are undisputed. Bennett worked for Sikorsky Aircraft for eight years. On April 22, 1992, she voluntarily left her full-time position to care for her minor daughter who suffers from hyperactivity and an emotional deficit disorder. The daughter's physician signed a certification to the employment security division stating that the daughter needs full-time care.

After Bennett left her job at Sikorsky, she filed a claim for unemployment compensation benefits with the administrator of the Unemployment Compensation Act. On May 13, 1992, the administrator determined that Bennett was not eligible for benefits because she was not available[3] for work as required by General Statutes § 31-235 (a) (2).

Bennett appealed the decision to an appeals referee. See General Statutes § 31-242. After a de novo hear-

conflict with his regular class hours as a student, and provided the administrator shall not use prior 'patterns of unemployment' of the individual to determine whether he is available for work; (3) he has been paid wages by an employer who was subject to the provisions of this chapter during the base period of his current benefit year in an amount at least equal to forty times his benefit rate for total unemployment: Provided an unemployed individual who is sixty-two years of age or older and is involuntarily retired under a compulsory retirement policy or contract provision shall be eligible for benefits with respect to any week, notwithstanding subdivisions (1) and (2) of this section, if it is found by the administrator that he has made claim for benefits in accordance with the provisions of section 31-240, has registered for work at the public employment bureau, is physically and mentally able to work, is available for work, meets the requirements of subdivision (3) of this section and has not refused suitable work to which he has been referred by the administrator. For purposes of subdivision (2) of this section, 'patterns of unemployment' means regularly recurring periods of unemployment of the claimant in the years prior to his filing the claim in question."

[3] "To be available for work within the meaning of the statute, one must be ready, able and willing to accept suitable employment. He must be exposed unequivocally to the labor market." *Stapleton* v. *Administrator,* 142 Conn. 160, 164–65, 112 A.2d 211 (1955); *Reger* v. *Administrator,* 132 Conn. 647, 651, 46 A.2d 844 (1946); *Mishaw* v. *Fairfield News,* 12 Conn. Sup. 318, 321 (1944). Here, Bennett does not dispute that she was not available for work.

ing, the referee affirmed the administrator's decision on June 2, 1992. Pursuant to General Statutes § 31-249,[4] Bennett appealed to the board of review. On July 23, 1992, the board of review adopted the findings of the appeals referee and affirmed the referee's decision.

On August 18, 1992, Bennett appealed to the Superior Court pursuant to General Statutes § 31-249b.[5] After hearing argument of counsel, the trial court rendered judgment sustaining Bennett's appeal and remanding the matter to the board of review for a hearing to determine the amount of benefits to be awarded. This appeal followed.[6]

---

[4] General Statutes § 31-249 provides: "At any time before the referee's decision has become final within the periods of limitation prescribed in section 31-248, any party including the administrator, may appeal therefrom to the board. Such appeal shall be filed and may be heard in any local office of the employment security division or, in the case of an interstate claim, in the office in which the claim was filed, or in the office of the appeals referee or the board of review. Such appeal to the board may be heard on the record of the hearing before the referee or the board may hear additional evidence or testimony, provided the board shall determine what evidence shall be heard in the appeal established in accordance with the standards and criteria in regulations adopted pursuant to section 31-237g. The board may remand the case to a referee for such further proceedings as it may direct. Upon the final determination of the appeal by the board, it shall issue its decision, affirming, modifying or reversing the decision of the referee. The board shall state in each decision whether or not it was based on the record of the hearing before the referees, the reasons for the decision and the citations of any precedents used to support it. In any case in which the board modifies the referee's findings of fact or conclusions of law, the board's decision shall include its findings of fact and conclusions of law."

[5] General Statutes § 31-249b provides in pertinent part: "At any time before the board's decision has become final, any party, including the administrator, may appeal to the superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the appellant resides. . . ."

[6] A threshold issue is whether this appeal was taken from a final judgment and, hence, whether this case is properly before the court. In oral argument before this court, both Bennett and the administrator argued that this appeal was taken from a final judgment. General Statutes § 4-183 (j) of the Uniform Administrative Procedure Act (UAPA) provides that a

The administrator claims that the trial court improperly applied General Statutes § 31-236 (a) (2) (A) (ii) to eliminate the requirement that a claimant must be available for work to be eligible for benefits under General Statutes § 31-235 (a) (2).

Section 31-235 (a) enumerates three benefit eligibility requirements. First, an individual must file a claim in accordance with § 31-240 and register for work at a public employment bureau. Second, the individual must be physically and mentally able to work and be available for work and be making reasonable efforts to work. This is referred to as the "availability provision." The third requirement is that the claimant has been paid wages by an employer, subject to the provisions of the Unemployment Compensation Act, during the base period of the current benefit year in an amount at least equal to forty times the claimant's benefit rate for total unemployment. The only exception to the availability provision in § 31-235 is that a claimant shall not be considered unavailable for work because he or she is enrolled in and attending a school, college or university during separation from employment.

Section 31-236 (a) lists certain situations where an individual is deemed ineligible for benefits. The situation pertinent here is where a claimant has "left suita-

remand for further proceedings is a final judgment. Unemployment compensation appeals, however, are exempt from the UAPA under General Statutes § 4-186 (a). Where the UAPA is not applicable, the test of whether a judgment is final turns on the scope of the proceeding on remand to the board. *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities,* 202 Conn. 150, 156–57, 520 A.2d 186 (1987). If proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings require the exercise of independent judgment or discretion or the taking of additional evidence, the appeal is premature and must be dismissed. *Szudora* v. *Fairfield,* 214 Conn. 552, 556, 573 A.2d 1 (1990). Having applied this test to the case before us, we conclude that the trial court's decision is an appealable final judgment because the remand to calculate benefits is ministerial.

ble work voluntarily and without sufficient cause connected to his work, until such individual has earned at least ten times his benefit rate." This is referred to as the "penalty provision." The statute contains exceptions to this penalty provision. The exceptions include individuals who quit to care for a seriously ill spouse, child, or parent domiciled with the claimant (referred to as the "quit to care provision") and discontinuance of nonpersonally owned transportation.

The administrator claims that the quit to care provision in § 31-236 operates only as an exception to the penalty imposed under that statute on those who voluntarily leave suitable work without sufficient cause connected to the work, and not as an exception to the availability provision in § 31-235. The administrator further asserts that this interpretation is consistent with the legislature's intent because if the legislature had intended to include the quit to care provision as an exception to the availability provision, it could have included it in § 31-235 together with the exception it created pertaining to students enrolled in and attending a school, college or university during separation from employment.

Bennett claims, to the contrary, that the quit to care provision in § 31-236 should also be applied as an exception to the availability provision in § 31-235 despite the absence of specific language directing such an application. She argues that the Unemployment Compensation Act is remedial legislation and, therefore, should be construed to alleviate the harsh consequences of unemployment. *Reger* v. *Administrator,* 132 Conn. 647, 650, 46 A.2d 844 (1946); *Waterbury Savings Bank* v. *Danaher,* 128 Conn. 78, 82, 20 A.2d 455 (1940).

The question presently before us then is whether the quit to care provision should be applied to the availa-

bility provision in § 31-235 or only as an exception to the penalty provision in § 31-236.

The trial court's standard of review with regard to administrative appeals is limited. "Such appeals are heard by the court upon certified copy of the record filed by the board. The court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusions reached." Practice Book § 519 (a). "The court's ultimate duty is to decide only whether, in light of the evidence, the board of review has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." *Burnham* v. *Administrator,* 184 Conn. 317, 322, 439 A.2d 1008 (1981); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 5, 434 A.2d 293 (1980); *Cervantes* v. *Administrator,* 177 Conn. 132, 134, 411 A.2d 921 (1979); *DaSilva* v. *Administrator,* 175 Conn. 562, 564, 402 A.2d 755 (1978); *Guevara* v. *Administrator,* 172 Conn. 492, 495, 374 A.2d 1101 (1977); *Taminski* v. *Administrator,* 168 Conn. 324, 326, 362 A.2d 868 (1975).

"[T]he interpretation of statutes presents a question of law; *Board of Education* v. *Freedom of Information Commission,* 217 Conn. 153, 158, 585 A.2d 82 (1991); which is ultimately for the court to decide." *University of Connecticut* v. *Freedom of Information Commission,* 217 Conn. 322, 328, 585 A.2d 690 (1991). Nonetheless, "it is the well established practice of this court to 'accord great deference to the construction given [a] statute by the agency charged with its enforcement.' " *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 326, 307 A.2d 155 (1972) (*Loiselle, J.,*

concurring), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973).

"When application of the statute to a particular situation reveals a latent ambiguity in seemingly unambiguous language, however, we turn for guidance to the purpose of the statute and its legislative history to resolve that ambiguity." *University of Connecticut* v. *Freedom of Information Commission,* supra, 217 Conn. 328; *State* v. *Champagne,* 206 Conn. 421, 428, 538 A.2d 193 (1988).

In 1985, the legislature amended § 31-236 creating exceptions to the penalty provision set forth therein. This amendment included the quit to care provision as well as the exception for discontinuance of transportation that is not personally owned. In debating the purpose and scope of this amendment, the sponsoring representative specifically stated that an individual who quits to care for a seriously ill family member is disqualified from collecting unemployment benefits. When the individual no longer needs to care for the family member and becomes available for work, the individual then becomes eligible for benefits without having to return to work and earn at least ten times his benefit rate.[7]

---

[7] "You've got an individual who perhaps doesn't have a car, can't afford a car, whatever. The fact is, he relies on a bus to get to work. The bus route stops. He's got to quit. Is that a compelling reason for quitting? How else is he going to get to work? Yes, that is a compelling reason, and so long as that person cannot get to work, under current law, *and under our amendment, he will still be disqualified from collecting unemployment compensation, but then as soon as transportation becomes accessible to him, or if he moves closer to a line of work, I'm suggesting at that point, when he is indeed available for work, when he is searching for work, why is [he] different from any other claimant at that point? He is not.*

"And yet, according to the Senate Bill, he is going to be denied unemployment compensation, temporary economic relief, until he returns to work, whenever that might be, and then earns ten times his benefit rate.

"Let me give you one other situation, and this actually did happen. This is not hypothetical. It happened.

It is clear from the legislative history that the purpose of the amendment was to create an exception to the penalty provision normally imposed on those who voluntarily quit suitable work. It was not enacted to eliminate the availability provision.

According deference to the construction given these statutes by the agency charged with its enforcement and in light of the legislative history, we conclude that the quit to care provision operates as an exception to the penalty provision in § 31-236 and does not apply as an exception to the availability provision in § 31-235.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment affirming the decision of the board of review.

In this opinion the other judges concurred.

---

"A woman asked her employer if she could change shifts because her husband was home from the hospital, he needed nursing aid and there was no other aid that she was able to get for him. She had to be with him during a particular time during the day. She asked for a change in shift. The employer said, sorry lady, there is no [opening], we can't do it for you.

"Ladies and gentlemen, is this a compelling reason to quit your job to be with your spouse, to help your husband, to help your wife? I submit to you it is. It is indeed compelling, and again the same situation would hold. You've got a woman here who is tending to her spouse's needs, or the other way around, the husband attending to his spouse's needs. *That person right now is unavailable for work. According to current law, and according to our amendment, that person would still be disqualified.* But once the husband or wife gets better and the spouse is looking for another job, according to the Senate Bill, this cruel Senate Bill, Senator O'Leary called it a Draconian bill, this person will be denied unemployment compensation." (Emphasis added.) 28 H.R. Proc., Pt. 7, 1985 Sess., p. 2311–13, remarks of Representative William A. Kiner.