THOMAS J. LATINA *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.
(AC 18098)

Foti, Landau and Stoughton, Js.

Argued March 30—officially released July 6, 1999

*Richard T. Sponzo,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellant (named defendant).

*Thomas J. Latina,* pro se, the appellee (plaintiff), with whom, on the brief, was *Sue Ann Shay.*

*Opinion*

LANDAU, J. The defendant administrator[1] of the Unemployment Compensation Act, General Statutes § 31-222 et seq., appeals from the judgment of the Superior Court sustaining the plaintiff's[2] appeal from the determination by the employment security board of review (board) that because the plaintiff had engaged in wilful misconduct, he was not entitled to unemployment compensation benefits. The sole issue on appeal is whether the plaintiff's actions constitute wilful misconduct within the meaning of General Statutes (Rev. to 1995) § 31-236, as amended by Public Acts 1995, No. 95-323, § 3.[3] We reverse the judgment of the Superior Court.

---

[1] "The administrator is the labor commissioner. General Statutes § 31-222 (c). He is charged with the initial responsibility of determining whether claimants are entitled to unemployment benefits. General Statutes § 31-241. Upon the filing of a claim, the administrator or a representative (examiner) designated by him must examine the claim and on the basis of the facts found by him, determine whether the claim is valid. Id. . . . [B]y statute the administrator is deemed to be a party to any proceeding . . . before a referee, the board or any reviewing court. General Statutes § 31-249c." (Citations omitted; internal quotation marks omitted.) *Finkenstein* v. *Administrator, Unemployment Compensation Act,* 192 Conn. 104, 108, 470 A.2d 1196 (1984).

[2] We note that the plaintiff, Thomas Latina, appeared pro se at oral argument before this court.

[3] As amended, General Statutes § 31-236 (a) provides in pertinent part: "An individual shall be ineligible for benefits . . . (2) . . . (B) if, in the opinion of the administrator, he has been discharged or suspended for . . . wilful misconduct in the course of his employment . . . ." For purposes of § 31-236 (a) (2) (B), "wilful misconduct" means "deliberate misconduct in wilful disregard of the employer's interest, or a single knowing violation of

A review of the relevant facts, which are undisputed by the parties, facilitates an understanding of the issue in this appeal. As set forth in the Superior Court's memorandum of decision, the plaintiff worked for the Torrington Company[4] (company), located in Torrington, as a maintenance technician for over twenty-three years until his dismissal on April 25, 1996. Prior to the plaintiff's dismissal, the company disciplined the plaintiff on two occasions for sleeping on the job. On September 6, 1994, the company issued the plaintiff a warning for sleeping on the job. Thereafter, in July, 1995, the company issued the plaintiff a two month suspension from work after finding him asleep on the job. At the time of the suspension, the plaintiff signed a "last chance" agreement to keep his job in which he agreed that any further violations of company rules occurring within twelve months after his return to work would result in his termination without recourse to the grievance procedure in the company's labor agreement.

Thereafter, the plaintiff went to his physician concerning his fatigue problem.[5] The plaintiff's physician, Frank Vanoni, placed the plaintiff on the medication Ritalin, which helped the plaintiff alleviate his fatigue problem. A few days before the plaintiff's last day of work, he ran out of his prescription for Ritalin. Because the plaintiff did not have the money to refill the prescription,[6] he did not have it refilled immediately. The plain-

a reasonable and uniformly enforced rule or policy of the employer, when reasonably applied, provided such violation is not the result of the employee's incompetence . . . ." General Statutes § 31-236 (15).

[4] We note that the Torrington Company-Delaware was named as a defendant in this action but did not file an appearance.

[5] On June 5, 1996, the plaintiff underwent a polysomnogram, a test requiring an individual to spend the night in the hospital in order to be observed sleeping. The report regarding the plaintiff's sleeping patterns indicated that his sleep was not normal, specifically, that his sleep was interrupted by an excess of awakenings, but the report did not indicate any diagnosis as to why he had trouble sustaining uninterrupted sleep.

[6] The cost to refill the prescription of Ritalin was $60, which the plaintiff had to pay and then seek reimbursement.

tiff never informed the company that he had run out of his Ritalin prescription.

The plaintiff normally commenced his shift at 6 a.m., and, because he resided in Hartford, it was necessary for him to awaken at 4 a.m. to arrive at work on time. This early schedule required the plaintiff to be in bed by 8 p.m. For the two days preceding his last day of work, however, he was unable to get to bed by 8 p.m. because he stayed up late for social reasons. The appeals referee also found that on the plaintiff's last day of work, April 25, 1996, the plaintiff was discovered at 6:20 a.m. sitting at his desk with his feet up. Five minutes later, the plaintiff had not moved and was told again to get started. At 7:15 a.m., the plaintiff was paged, but did not respond. Sometime thereafter, the plaintiff was found asleep in a utility room on the third floor. The company discharged the plaintiff that day.

Thereafter, the plaintiff applied for unemployment compensation benefits. The administrator determined that the plaintiff was not entitled to receive those benefits.[7] The plaintiff appealed the administrator's decision to an appeals referee, who affirmed the denial of benefits, ruling that the plaintiff's actions in allowing his prescription to lapse and staying up late for two nights constituted deliberate misconduct because it resulted in the plaintiff's falling asleep on the job.

The plaintiff appealed the referee's decision to the board. The board reviewed the record and determined that the referee's findings of fact were fully supported

[7] The denial letter from the unemployment compensation department states: "You were discharged by the Torrington Company-Delaware on: April 25, 1996. The record indicates that the reason for your discharge was sleeping on duty. This indicates a single knowing violation of a reasonable and uniformly enforced rule of policy reasonably applied by the employer. Since the violation was not the result of your incompetence, benefits are denied effective April 21, 1996, to such time as you have earned at least ten times your weekly benefit rate and are otherwise eligible."

by the record. The board further determined that the referee's conclusion was legally consistent with those findings and with the provisions of the Unemployment Compensation Act governing the issue in the appeal. Accordingly, the board adopted the referee's findings of fact and affirmed the referee's decision.

Thereafter, the plaintiff appealed to the Superior Court from the decision of the board. The Superior Court sustained the appeal, ruling that, although the plaintiff's behavior may have been negligent and thoughtless, it did not rise to the level of wilful misconduct within the meaning of § 31-236 (a) (2) (B). The Superior Court remanded the case for further proceedings consistent with its opinion. From that judgment, the present appeal ensued.[8]

On appeal, the administrator's sole claim is that the Superior Court improperly concluded that the plaintiff's

---

[8] Initially, we must determine whether this appeal was taken from a final judgment and, hence, whether it is properly before this court. *Dacey* v. *Commission on Human Rights & Opportunities*, 41 Conn. App. 1, 4, 673 A.2d 1177 (1996) (lack of final judgment is threshold question that implicates subject matter jurisdiction of this court). "General Statutes § 4-183 (j) of the Uniform Administrative Procedure Act (UAPA) provides that a remand for further proceedings is a final judgment. Unemployment compensation appeals, however, are exempt from the UAPA under General Statutes § 4-186 (a). Where the UAPA is not applicable, the test of whether a judgment is final turns on the scope of the proceeding on remand to the board. . . . If proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings require the exercise of independent judgment or discretion or the taking of additional evidence, the appeal is premature and must be dismissed." (Citation omitted.) *Bennett* v. *Administrator, Unemployment Compensation Act*, 34 Conn. App. 620, 623–24 n.6, 642 A.2d 743 (1994). Because the Superior Court invalidated the only ground on which the board denied the plaintiff unemployment benefits, the board on remand would not have to exercise independent judgment or discretion or take additional evidence before awarding the plaintiff his unemployment benefits. Our review of the record indicates that the appeals referee found that the plaintiff established a weekly benefit rate of $335. Moreover, a remand to calculate benefits is ministerial. Id. We conclude, therefore, that the Superior Court's judgment sustaining the plaintiff's appeal is an appealable final judgment.

conduct did not rise to the level of wilful misconduct within the meaning of § 31-236 (a) (2) (B), and, therefore, would not disqualify him from receiving unemployment benefits. We agree.

The appropriate standard of review with regard to the issue presented in this appeal is limited. "To the extent that an administrative appeal, pursuant to General Statutes § 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review. The court must not retry facts nor hear evidence." (Internal quotation marks omitted.) *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act*, 238 Conn. 273, 276, 679 A.2d 347 (1996). The Superior Court, therefore, "is bound by the findings of subordinate facts and the reasonable conclusions of fact made by the appeals referee." (Internal quotation marks omitted.) *Westport Development & Mfg. Co.* v. *Administrator, Unemployment Compensation Act*, 9 Conn. App. 189, 190, 517 A.2d 1050 (1986). "If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act*, supra, 276.

Moreover, we note that "[a]s a general rule, [t]he application of statutory criteria to determine a claimant's eligibility for unemployment compensation under General Statutes §§ 31-235 and 31-236 involves mixed questions of fact and law in which the expertise of the administrative agency is highly relevant." (Internal

quotation marks omitted.) *United Parcel Service, Inc.* v. *Administrator, Unemployment Compensation Act,* 209 Conn. 381, 386, 551 A.2d 724 (1988). "[T]he remedial purpose of the Unemployment Compensation Act is to provide relief for its primary beneficiaries, those who are unemployed without fault or for cause . . . but this beneficent remedial purpose does not support the grant of benefits to an employee guilty of wilful misconduct." (Citation omitted.) Id., 388.

The plaintiff does not challenge the referee's findings of fact, but, instead, challenges the conclusion that the referee and the board reached, based on those factual findings, that the plaintiff's actions constituted wilful misconduct. The plaintiff notes that in *United Parcel Service, Inc.* v. *Administrator, Unemployment Compensation Act,* supra, 209 Conn. 386–87, the court stated that "as a matter of law, it is well established that disregard of the standards of behavior that an employer has the right to expect of his employees, by carelessness or negligence of sufficient degree or frequency to show disregard for the employer's interests or equal culpability, constitutes wilful misconduct." The plaintiff attempts to distinguish *United Parcel Service, Inc.,* from the present case, however, by noting that in *United Parcel Service, Inc.,* the claimant had committed twenty-six policy infractions, including ten delivery violations and six misdeliveries in only eleven years of employment. In the present case, the plaintiff argues that the degree and frequency of his violations were much less than those of the claimant in *United Parcel Service, Inc.,* in that the plaintiff committed only three violations in the course of twenty-three years of employment. Furthermore, the plaintiff argues "that the cases the court in [*United Parcel Service, Inc.* v. *Administrator, Unemployment Compensation Act,* supra, 387] cited as instances in which negligence rose to the level of wilful misconduct all involved greater intentionality and immediacy in the employee's actions." The plaintiff

also asserts that "[a]ll [those] cases have in common deliberate, repeated flouting of the employer's rules."

We note, however, that at the time *United Parcel Service, Inc.*, was decided, in 1988, General Statutes (Rev. to 1987) § 31-236 (a) provided in relevant part: "An individual shall be ineligible for benefits . . . (2) . . . (B) if, in the opinion of the administrator, he has been discharged or suspended for . . . *repeated* wilful misconduct in the course of his employment . . . ." (Emphasis added.) In 1995, however, the statute was amended by deleting "repeated" before wilful misconduct. Public Acts 1995, No. 95-323, § 3 (effective October 1, 1995); see also footnote 3. Furthermore, the statutory language was amended to state that "wilful misconduct" means "deliberate misconduct in wilful disregard of the employer's interest, or a *single* knowing violation of a reasonable and uniformly enforced rule or policy of the employer, when reasonably applied, provided such violation is not a result of the employee's incompetence . . . ." (Emphasis added.) General Statutes (Rev. to 1995) § 31-236 (a), as amended by Public Acts 1995, No. 95-323, § 3. The absence of repetition, therefore, does not prevent the possibility of discharge for wilful misconduct.

In the present case, the company, on two prior occasions, had disciplined the plaintiff for sleeping on the job, including a suspension accompanied by a last chance agreement subjecting him to discharge for another similar incident. The appeals referee found that on his last day of work, the plaintiff was warned twice about getting his work started; at 6:20 a.m., he was told to get started when he was found sitting at his desk with his feet up, and he was again told to get started five minutes later. The plaintiff also failed to respond to a page at 7:15 a.m. Sometime thereafter, the plaintiff was found asleep in a utility room on the third floor. This conduct evinces a wilful disregard of a substantial employer interest and expected standards of behavior.

See Regs., Conn. State Agencies § 231-236-26, as in effect from 1986 until 1997.

Although the incident giving rise to the plaintiff's termination may have occurred as a result of his not having taken his medication, the prior warnings, although not dispositive on the issue of wilful misconduct; see Regs., Conn. State Agencies § 31-236-26c, as in effect from 1986 until 1997; were properly considered in establishing the plaintiff's awareness that the company did not tolerate this type of behavior. See *Rivera* v. *Administrator, Unemployment Compensation Act,* 4 Conn. App. 617, 621, 495 A.2d 1125 (1985) (prior warnings properly considered in establishing plaintiff's awareness of situation and in determining wilful misconduct); see also Regs., Conn. State Agencies § 31-236-26 (c), as in effect from 1986 until 1997 ("[i]n determining whether wilful misconduct occurred, the Administrator shall consider the prior issuance of any warning to the individual by his employer in response to the same or similar conduct"). Our review of the record persuades us that the conclusion of the appeals referee, that the plaintiff's dismissal was the result of an act of wilful misconduct in the course of employment, reasonably and logically could have followed from the facts of this case.

The administrator acknowledges that "extenuating circumstances, such as extreme fatigue and inability to take sufficient breaks, may negate deliberate or reckless action . . . ." In the present matter, however, the administrator argues that the plaintiff created the risk of sleeping and failed to inform the employer of such risk, thereby precluding the excuse of such conduct on the basis of mitigating circumstances. In his brief, the plaintiff concedes that the "[administrator] correctly notes that the [board] has consistently ruled that sleeping on the job is a prima facie act of wilful misconduct." The plaintiff argues, however, that there were mitigating

circumstances and that the Superior Court properly characterized his situation not as wilful misconduct but, instead, as "someone who foolishly put himself in a situation where his late hours, lack of medicine, and abnormal sleep habits resulted in his being overcome with fatigue at work."

The appeals referee found that the plaintiff engaged in conduct that allowed him to fall asleep while at work despite prior warnings about sleeping on the job, namely the warnings he received in September, 1994, and in July, 1995, as well as the warnings he received on the morning of April 26, 1996. The appeals referee also found that a few days before his last day of work, which was less than a year after signing the last chance agreement, the plaintiff ran out of his prescription for Ritalin and was unable to get the prescription refilled immediately. Furthermore, for the two days preceding his last day of work, the plaintiff was unable to get to bed by 8 p.m. because he stayed up late for social reasons. The plaintiff notes in his brief that "[p]erhaps he should have foreseen that staying up late and not renewing his prescription would have led to his falling asleep . . . ."

The plaintiff was aware of his fatigue problem, as evidenced by the fact that he procured medication for the alleged illness, which apparently provided an effective remedy for his fatigue problem when he was taking the medication. The plaintiff, by failing to inform the company that he had allowed his prescription to lapse, deprived the company of an opportunity to take any necessary steps to protect its own interests. Instead, the plaintiff, who was aware of his history of falling asleep and his need for Ritalin, chose to engage in conduct that he knew might create a situation in which he would again fall asleep on the job. The appeals referee reasonably could have inferred, therefore, that the plaintiff engaged in conduct with "reckless indifference for the probable consequences of such [actions] . . . ."

Regs., Conn. State Agencies § 31-236-26 (a) (1), as in effect from 1986 until 1997. We conclude, therefore, that the appeals referee reasonably and logically could have concluded that the plaintiff did not present any mitigating circumstances. Accordingly, our review of the record persuades us that the decision of the board that the plaintiff's actions amounted to wilful misconduct was logically supported by the evidence, and was not unreasonable, arbitrary, illegal or an abuse of the board's discretion. See *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act,* supra, 238 Conn. 276.

The judgment is reversed and the case is remanded with direction to render judgment affirming the decision of the board.

In this opinion the other judges concurred.