[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Salvey Office Systems, Inc. appeals from a decision by the employment security board of review in which the board determined that the claimant-defendant, Christopher J. Munroe (Munroe) was eligible for unemployment compensation benefits. The Administrator of the Unemployment Compensation Act is the named defendant. The board of review acted pursuant to General Statutes § 31-249. The plaintiff appeals to the Superior Court pursuant to General Statutes § 31-249b.
On August 30, 1996, the board of review rendered its decision to award Munroe unemployment benefits. (Return of Record [ROR], Item 22.) The decision was mailed to Munroe on August 30, 1996. (ROR, Item 22.) Under General Statutes §§ 31-248 and 31-249a(c), the plaintiff exhausted its administrative remedies. The decision was timely appealed to the Superior Court on September 30, 1996. (ROR, Item 23.) A record of the proceedings were filed with the Superior Court on October 18, 1996. The plaintiff amended its appeal on November 26, 1996. The plaintiff and the administrator filed briefs.
The record reveals the following. On January 13, 1994, Munroe, who was employed by the plaintiff as a service manager/technician, fell at work and injured his back. (ROR, Item 22.) As a result of this injury, Munroe received workers' compensation benefits from January to December, 1994. (ROR, Item 22.) Munroe attempted to return to work within a month of the CT Page 1682 accident, even though he had not been released for light or regular duty by his physician. (ROR, Item 22.) Munroe alleges that he telephoned the plaintiff numerous times to discuss a date for him to return to work, however, the plaintiff's records do not indicate that it received the calls.[1] (ROR, Item 19.) On April 26, 1994, Munroe was released by his physician for light-duty work with a restriction that he could not lift more than twenty pounds at a time. (ROR, Items 6, 22.) Munroe alleges he contacted the plaintiff regarding his medical status and informed the plaintiff that he was released to light duty. (ROR, Item 22.)
On or about July 7, 1994, Munroe spoke with Lynn Mohlenhoff, director of business operations for the plaintiff about his position. (ROR, Item 19.) Mohlenhoff explained that the office had been restructured and that she was now responsible for the supervision of his department. (ROR, Item 19.) Munroe alleges that Mohlenhoff told him there was no light duty work available but that she would keep his prior position open in the event he became physically capable of returning to his regular duties. (ROR, Item 22.) In addition, Munroe alleges that they discussed whether his physician would release him for regular duty in July, 1994. (ROR, Item 22.) Munroe was not released for regular duty in July, 1994, but was still available for light duty. (ROR, Items 11, 22.) On September 27, 1994, the plaintiff sent a letter to Munroe advising him that the company was no longer able to hold a service technician position open for him due to economic pressures.[2] (ROR, Item 5.) On January 1, 1995, Munroe's physician released him to return to his regular job duties. (ROR, Item 22.).
Munroe then applied for unemployment compensation benefits. The administrator determined that Munroe was eligible for unemployment compensation benefits beginning the week ending March 11, 1995. (ROR, Item 12.) The administrator notified the plaintiff of its chargeability for these benefits on August 24, 1995. (ROR, Item 12.) Pursuant to General Statutes § 31-241, the plaintiff appealed the administrator's decision to the unemployment compensation appeals referee on September 13, 1995. (ROR, Items 2, 12.) On October 13, 1995, the referee affirmed the administrator's decision that Munroe was eligible for unemployment compensation benefits. (ROR, Item 12.) The referee concluded that Munroe "was absent from work for good cause and kept in contact with the employer regarding his medical status" and therefore his lengthy absence from work did not result from any wilful misconduct on his part. (ROR, Item 12.) In accordance with General Statutes § 31-249, the plaintiff appealed the referee's decision to the board on the following grounds: (1) the referee wrongly found that Munroe was eligible to return to work; and (2) that the referee decided the wrong issue. (ROR, Item 13.) In this appeal, the plaintiff alleged that the issue that the referee should have addressed was whether Munroe refused, without sufficient cause, to accept CT Page 1683 a job the plaintiff offered to him, and not whether Munroe was guilty of wilful misconduct. (ROR, Item 13.)
Pursuant to General Statutes, § 31-249, on December 12, 1995, the chairman of the board of review remanded the case to the referee to explore whether Munroe repeatedly requested and was refused light duty work during the period beginning shortly after his injury. (ROR, Item 15.) On May 28, 1996, the referee reversed the administrator's decision and ruled that Munroe was not entitled to unemployment benefits. (ROR, Item 19.). The referee based his decision on Munroe's failure to comply with the referee's request to provide evidence of the telephone calls he made to the plaintiff to discuss his position and on Mohlenhoff's testimony that she could only recall having one telephone conversation with Munroe. (ROR, Item 19.) Thus, the referee determined that there was no concrete evidence that Munroe was only able to do light duty work. (ROR, Item 19.) The referee also found that Munroe failed to properly advise the plaintiff of this restriction thereby failing to afford the plaintiff a reasonable opportunity to address Munroe's limitations. (ROR, Item 19.)
On June 17, 1996, Munroe filed an appeal of this decision to the board on the ground that he never received the referee's request for information because he moved out of state. (ROR, Items 20, 22.) On August 30, 1996, the board reversed the appeals referee's decision and found that Munroe was entitled to unemployment compensation benefits because the plaintiff was aware of the light duty restriction. (ROR, Item 22.) Thus, the board concluded, there was no evidence that Munroe voluntarily left or abandoned his job. (ROR, Item 22.) The board then excused Munroe's failure to respond to the referee's request for evidence because Munroe moved out of state during the appeals process. (ROR, Item 22.) The board ruled on the merits of the appeal in the interest of justice instead of remanding the case back to the referee to receive the new evidence. (ROR, Item 22.) The plaintiff subsequently filed an appeal with the Superior Court on September 30, 1996.
"Proof of aggrievement is an essential prerequisite to the court's jurisdiction of the subject matter of the appeal." (Internal quotation marks omitted.) Local 1301 Local 1378 v. Freedom of InformationCommission, 191 Conn. 173, 177; 463 A.2d 613 (1983). "The fundamental test for establishing classical aggrievement is well settled: [F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision. . . . Second, the party claiming aggrievement also must demonstrate that its asserted interest has been specially and injuriously affected in a way that is cognizable by law." (Internal quotation marks omitted.) King v.Sultar, 253 Conn. 429, 434-435; 754 A.2d 782 (2000). CT Page 1684
In the present case, the plaintiff has been aggrieved because its pecuniary interests have been directly, specifically, and adversely affected by the board's dismissal of the appeal in that the plaintiff will be charged for unemployment compensation benefits paid to Munroe.
General Statutes § 31-249b provides, in pertinent part: "At any time before the board's decision has become final, any party, including the administrator, may appeal to the superior court. . . ." General Statutes § 31-249a(a) provides, in pertinent part: "Any decision of the board, in the absence of a timely filed appeal from a party aggrieved thereby or a timely filed motion to reopen, vacate, set aside or modify such decision from a party aggrieved thereby, shall become final on the thirty-first calendar day after the date on which a copy of the decision is mailed to the party . . ."
In the present case, the decision of the board was mailed on August 30, 1996. The plaintiff filed his appeal on September 30, 1996, within the appeal period provided in § 31-249a. Therefore, the present appeal is timely.
"Judicial review of any decision shall be allowed only after an aggrieved party has exhausted his remedies before the board. General Statutes §§ 31-248(c) and 249a(c)." Molnar v. Administrator,Unemployment Compensation Act, 44 Conn. Sup. 285, 289, 685 A.2d 1157
(1995), aff'd., 239 Conn. 233, 685 A.2d 1107 (1996). The court finds that because the board of review has rendered judgment in this matter, the exhaustion requirements have been met.
"[A]ppeals from the [employment security board of review] to the Superior Court are specifically exempted from governance by General Statutes § 4-166 et seq., the Uniform Administrative Procedure Act.[3] All appeals from the board to the court are controlled by Section 31-249b." Calnan v. Administrator, Unemployment CompensationAct, 43 Conn. App. 779, 783, 686 A.2d 134 (1996). In an appeal under General Statutes § 31-249, "any finding of the board shall be subject to correction only to the extent provided by section 159 [now Practice Book (1998 Rev.) § 22-9] of the Connecticut Practice Book." Id. 783-784.
Practice Book § 22-9(a) provides in part: "Such appeals are heard by the court upon the certified copy of the record filed by the board. The court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusions CT Page 1685 reached. It can not review the conclusions of the board when these depend upon the weight of the evidence and the credibility of witnesses. In addition to rendering judgment on the appeal, the court may order the board to remand the case to a referee for any further proceedings deemed necessary by the court. The court may remand the case to the board for proceedings de novo, or for further proceedings on the record, or for such limited purpose as the court may prescribe. The court may retain jurisdiction by ordering a return to the court of the proceedings conducted in accordance with the order of the court, or may order final disposition." Subsection (b) further provides: "Corrections by the court of the board's finding will only be made upon the refusal to find a material fact which was an admitted or undisputed fact, upon the finding of a fact in language of doubtful meaning so that its real significance may not clearly appear, or upon the finding of a material fact without evidence." Practice Book § 22-9(b).
"To the extent that an administrative appeal, pursuant to General Statutes § 31-249b, concerns findings of fact, a court is limited to a review of the record certified, and filed by the board of review. The court must not retry the facts nor hear evidence. . . . If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) Mattatuck Museum-Mattatuck HistoricalSociety v. Administrator, Unemployment Compensation Act, 238 Conn. 273,276, 679 A.2d 347 (1996).
Moreover, "[a]s a general rule, [t]he application of statutory criteria to determine a claimant's eligibility for unemployment compensation under General Statutes §§ 31-235 and 31-236 involves mixed questions of fact and law in which the expertise of the administrative agency is highly relevant." (Internal quotations marks omitted.) Latina v. Administrator,Unemployment Compensation Act, 54 Conn. App. 154, 159, 733 A.2d 885
(1999).
The plaintiff argues that the board of review's decision granting unemployment benefits to Munroe was unreasonable, illegal, arbitrary or an abuse of its discretion in that (1) Munroe's failure to produce certain telephone records reflecting intent and ability to perform was due to expense and inconvenience; (2) that Munroe's failure to produce the telephone records were material to the board's decision and; (3) that the board did not give sufficient weight to Lynn Mohlenhoff's testimony. CT Page 1686 The weight to be given testimony may be disposed of summarily. The same is not subject to review (P.B. § 22-9; supra). In response to the first two issues, the administrator argues that the issue of whether Munroe contacted the plaintiff about returning to work is a material fact which is not properly before the court because the plaintiff did not file a motion to correct the findings of the board, which is a necessary prerequisite to a challenge of the board's factual findings.
Practice Book § 22-4 provides in part that: "[i]f the appellant desires to have the finding of the board corrected he or she must, within two weeks after the record has been filed in the superior court . . . file with the board a motion for the correction of the finding and with it such portions of the evidence as he or she deems relevant and material to the corrections asked for, certified by the stenographer who took it." The filing of a motion to correct the findings with the board is "a necessary prerequisite to a challenge of the board's decision." Calnanv. Administrator, Unemployment Compensation Act, supra. 43 Conn. App. 785. "Where . . . the plaintiff has failed to file with the board a motion to correct the findings, the Court is bound by the finding of facts determined by the board." Leftridge v. Administrator, UnemploymentCompensation Act, Superior Court, judicial district of New London at Norwich, Docket No. 111502 (January 13, 1998, Purtill, J.), aff'd.,56 Conn. App. 901, 741 A.2d 15 (1999). If, as in the present case, the plaintiff failed to file a motion to correct the board's findings, "this court is limited to the factual findings adopted by the board and its role is to determine whether the decision of the board was logically and rationally supported by the evidence, and whether the decision was unreasonable, arbitrary, illegal or an abuse of [the board's] discretion." Thompson v. Administrator, Unemployment Compensation Act, Superior Court, judicial district of Tolland at Rockville, Docket No. 64844 (January 12, 2000, Klaczak, J.). Therefore, the court's inquiry is limited to the issue of whether the board abused its discretion in determinating that Munroe did not voluntarily terminate his employment.
The plaintiff argues that the board abused its discretion in making this determination because Munroe failed to prove that he made an effort to return to work. The administrator argues that the court does not need to review Munroe's phone records to establish whether he abandoned his job because the board found sufficient evidence that Munroe did not do so. General Statutes § 31-236(a)(2)(A) governs voluntary leave as a basis for denying unemployment compensation benefits. Section31-236(a)(2)(A) provides in pertinent part that an individual shall be ineligible for benefits "if, in the opinion of the administrator, he has left suitable work voluntarily and without good cause attributable to the employer . . . and, provided further, no individual shall be ineligible for benefits if he leaves suitable work (i) for good cause attributable CT Page 1687 to the employer, including leaving as a result of changes in conditions created by his employer . . . or (B) if, in the opinion of the administrator, he has been discharged or suspended for . . . wilful misconduct in the course of his employment, [or] just cause. . . ."
Sections 31-236-17(b) and 31-236-18 of the Regulations of State Agencies define voluntary leave. Section 31-236-17(b) states in pertinent part: "No individual shall be ineligible for benefits as a result of a voluntary leaving of work under any of the following circumstances: (1) where he leaves suitable work for good cause attributable to the employer, including leaving as a result of changes in conditions created by his employer." Section 31-236-18 states in pertinent part: "In order to establish that an individual left suitable work voluntarily, the Administrator must find that the individual committed the specific intentional act of terminating his own employment. The Administrator may not find that an individual left suitable work voluntarily if . . . (2) the individual left work as the result of a demand by his employer to either quit or be discharged. . . ."
"An individual leaves suitable work `for cause' within the meaning of the statute, when he leaves employment `for reasons which would impel the ordinary reasonable person to leave and which provide the individual with no reasonable alternative but to terminate his employment.' Robinson v.Unemployment Security Board of Review [181 Conn. 1, 23, 434 A.2d 293
(1980)]. As a matter of law, therefore, a claimant must show that his basis for leaving employment is objectively reasonable and that no reasonable alternative to termination exists." Acro Technology, Inc. v.Administrator, Unemployment Compensation Act, 25 Conn. App. 130, 135,593 A.2d 154 (1991).
In this case the board determined that Munroe did not voluntarily leave or abandon his job and his failure to return to work was not an act of wilful misconduct. The record clearly supports such findings. Thus, Munroe sustained a work related injury and thereafter was placed on light duty status. That status remained to the point of termination.
The record reflects an employer acting in utmost good faith in attempting to keep a job open. However, that job was a full duty position. Light duty status could not be accommodated through no fault of either party. The argument of failure to communicate is to no avail. Whether "current condition" information during the period of July, 7, 1994, to September, 27, 1994, was or was not provided is not determinative of the ultimate issue. Whether or not such information was available to the employer is not determinative of the ultimate issue. What is determinative were the economic conditions requiring CT Page 1688 termination. At the time of termination Munroe was unavailable for full duty responsibilities. His light duty status remained until January 1, 1995.
His termination was due to economic pressures, at the time of at least partial disability which a good faith employer could not accommodate. Because the board's decision was logical and rationally supported by the record and was not unreasonable, arbitrary, illegal or an abuse of discretion, the plaintiff's appeal is hereby dismissed.
Comerford, J.