[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF THE CASE
The plaintiff, Michael Yurechko, appeals from a decision of the employment security board of review (board), denying his claim for unemployment benefits. The administrator of the Unemployment Compensation Act is the named defendant. The board acted pursuant to General Statutes § 31-249. The plaintiff appeals pursuant to General Statutes §31-249b.
 II PROCEDURAL HISTORY
On January 4, 1999, Yurechko filed an unemployment compensation claim. (Return of Record [ROR], Item 1.) The administrator determined that Yurechko was not eligible for benefits pursuant to General Statutes § 31-241. (ROR, Item 2.) Yurechko filed an appeal of the administrator's decision on January 26, 1999. (ROR, Item 3.) Pursuant to General Statutes § 31-242, the appeals referee affirmed the decision of the administrator. (ROR, Item 7.) On March 2, 1999, pursuant to General Statutes § 31-249, Yurechko filed an appeal from the referee's decision with the board (ROR, Item 9.) The board reviewed the record, adopted the referee's factual findings, and affirmed the decision. (ROR, Item 10.) CT Page 16047
The board's decision was mailed to Yurechko on April 9, 1999. (ROR, Item 10.) Pursuant to General Statutes § 31-249b, Yurechko filed a timely appeal from the board's decision to the Superior Court for the judicial district of Windham on April 29, 1999. (ROR, Item 11.) The return of record was filed with the court on May 10, 1999.
 III FACTUAL HISTORY
The record reveals the following facts. Yurechko was employed as a part-time client supervisor at Perception Programs, Inc., from August 11, 1994 to December 30, 1998. (ROR, Item 2.) The employer announced a new smoking policy effective on January 1, 1999, which would prohibit smoking on the premises. (ROR, Item 2.) On December 23, 1998, Yurechko gave his employer notice of his resignation effective January 1, 1999. (ROR, Item 2.) In the resignation letter, Yurechko stated that he was leaving due to the implementation of a no smoking policy on the business premises. (ROR, Item 2.) Upon receiving the resignation from Yurechko, his supervisor offered to extend the old smoking policy until June, 1999, and Yurechko indicated that he would stay until June, 1999. (ROR, Item 2.) Nevertheless, Yurechko resigned because he was informed that he needed to complete forty hours of job related training on his own time. (ROR, Item 8.) Yurechko did not rescind his resignation letter and his last day of work was December 30, 1998. (ROR, Item 2.) On January 4, 1999, Yurechko filed an unemployment compensation claim with the employment security division. (ROR, Item 1.) Yurechko completed and signed a fact finding report on January 15, 1999. (ROR, Item 2.) In addition to the claim that the forty hours of external training was a new requirement, Yurechko claimed that he resigned because of the criticism from his director and job-related stress, which was affecting his recovery from alcoholism and drug abuse.
The administrator determined that there were no changes to the job that would have rendered it unsuitable. (ROR, Item 2.) The administrator found that the smoking policy was not changing until June, 1999, and that the employer had always required forty hours of yearly training. (ROR, Item 2.) Accordingly, the administrator found that the conditions at work had not changed. (ROR, Item 2.) The administrator also determined that there was no evidence that the criticism Yurechko received from the supervisor was unfair or discriminatory. (ROR, Item 2.) Therefore, the administrator concluded that Yurechko quit his job for personal reasons and denied him unemployment compensation benefits. (ROR, Item 2.)
Yurechko filed a timely appeal of the administrator's decision to the appeals referee on January 26, 1999. (ROR, Item 3.) A de novo hearing was CT Page 16048 held before the appeals referee on February 16, 1999. (ROR, Item 7.) Based on the evidence and the testimony of the parties, the referee determined that Yurechko left suitable employment without good cause attributable to the employer. (ROR, Item 7.)
The referee held that the new smoking policy, which was not going to be effective until May or June of 1999, did not adversely affect Yurechko at the time of his resignation and, therefore, it was not good cause for Yurechko to leave his employment. (ROR, Item 7.) The referee further found that the employee manual contained a written statement of the requirement that employees complete forty hours of employer-paid job related training on their own time and, therefore, it was not a new requirement of employment. (ROR, Item 7.) Despite Yurechko's claims that criticism from his supervisor caused him to leave, Yurechko testified that he did not quit his job due to criticism. (ROR, Item 7.) Yurechko also failed to provide credible and reliable evidence demonstrating that his working conditions affected his ability to avoid drugs. and alcohol. (ROR, Item 7.)
The referee concluded that Yurechko voluntarily left suitable work without good cause attributable to the employer. (ROR, Item 7.) The referee reasoned that Yurechko did not pursue alternatives that may have alleviated some of his concerns and job-related stress. (ROR, Item 7.) The referee stated that Yurechko could have requested a transfer to a different department with a different supervisor, but he did not because he was primarily concerned with the new smoking policy that would prohibit employees from smoking at work. (ROR, Item 7.) Additionally, Yurechko never attempted to inform his employer that he was having problems maintaining his sobriety due to job related stress, and he did not report the problems he was having with his supervisor. (ROR, Item 7.) The decision of the referee was mailed to the parties on February 22, 1999. (ROR, Item 7.)
On March 2, 1999, Yurechko appealed the decision of the referee to the board. (ROR, Item 9.) In this appeal, Yurechko claimed that the employee manual did not contain a requirement that employees complete forty hours of training on their own time. (ROR, Item 9.) Yurechko admitted the forty hours of training was mandatory, however, he claims that there was no requirement for external training. (ROR, Item 9.) Yurechko also alleged that the criticism by his supervisor was the cause of his stress and that efforts to talk to his supervisor were futile. (ROR, Item 9.) According to the allegations, the job-related stress threatened Yurechko's ability to avoid drugs and alcohol. (ROR, Item 9.) Yurechko further alleged that the no smoking policy was implemented one week after he resigned and that he didn't believe that the employer was going to wait to implement the new policy until June, 1999. (ROR, Item 9.) Yurechko also claimed that he CT Page 16049 could not request a transfer because it would not be within a reasonable distance of his home. (ROR, Item 9.)
The board reviewed the record and listened to the tape recording of the referee's hearing. (ROR, Item 10.) The board adopted the referee's findings of fact and added one additional fact. (ROR Item 10.) The board concluded that Yurechko had failed to adequately explore alternatives available to him by discussing these issues with the human resources director. (ROR, Item 10.) Additionally, the board found that Yurechko left before there was any meaningful discussion on ways that Yurechko could complete his forty hours of training and receive compensation for the time spent in training. (ROR, Item 10.) The board also found that Yurechko did not report his alleged problems with his supervisor to the human resources director. (ROR, Item 10.) Yurechko also did not inform the employer that the stress from his work was exacerbating a medical condition. (ROR, Item 10.) Finally, the board concluded that the fact that the no smoking policy was implemented a week after Yurechko's resignation did not prove that the employer had no intention of delaying the implementation of the no smoking policy for six months. (ROR, Item 10.) The board affirmed the referee's decision because Yurechko did not leave employment for good cause attributable to his employer and Yurechko failed to explore available alternatives. (ROR, Item 10.) Yurechko now appeals from the decision of the board.
 IV JURISDICTION
"Judicial review of any decision shall be allowed only after an aggrieved party has exhausted his remedies before the board." Molnar v.Administrator, Unemployment Compensation Act, 44 Conn. Sup. 285, 289,685 A.2d 1157 (1995), aff'd, 239 Conn. 233, 685 A.2d 1107 (1996). "A party is aggrieved when a party is affected directly or in relation to a specific, personal and legal interest in the subject matter of the decision. . . . Smith v. Planning Zoning Board, 203 Conn. 317, 321,524 A.2d 1128 (1987)." (Internal quotation marks omitted.) Molnar v.Administrator, Unemployment Compensation Act, supra, 44 Conn. Sup. 289. When a plaintiff's pecuniary interest is affected by the board's decision, the plaintiff is aggrieved. Id. The court finds that Yurechko is aggrieved because his pecuniary interests are directly, specifically, and adversely affected by the board's decision to deny unemployment compensation benefits. The court further finds that Yurechko has exhausted his administrative remedies.
 V
CT Page 16050 STANDARD OF REVIEW
"All appeals from the board to the court are controlled by [General Statutes] § 31-249b." Calnan v. Administrator, 43 Conn. App. 779,783, 686 A.2d 134 (1996). General Statutes § 31-249b provides, in pertinent part, that "[i]n any appeal, any finding of the referee or the board shall be subject to correction only to the extent provided by section 22-9 of the Connecticut Practice Book. . . ."
Practice Book § 22-9 provides, in pertinent part, that "[t]he court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the board when these depend upon the weight of the evidence and the credibility of the witnesses. . . ." Practice Book § 22-4 sets forth the procedures for filing a motion to correct the factual findings of the board. "If the appellant desires to have the finding of the board corrected he or she must, within two weeks after the record has been filed in the superior court . . . file with the board a motion for the correction of the finding and with it such portions of the evidence as he or she deems relevant and material to the corrections asked for, certified by the stenographer who took it. . . ." Practice Book § 22-4.
"To the extent that an administrative appeal, pursuant to General Statutes § 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review. The court must not retry the facts nor hear evidence. . . . If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not have reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion."Mattatuck Museum-Mattatuck Historical Society v. Administrator,238 Conn. 273, 276, 679 A.2d 347 (1996).
 VI DISCUSSION
In the present case, Yurechko challenges the factual findings of the board, asserting that he resigned from his job because of abuse by his supervisor and job-related stress. Yurechko asserts, despite the board's CT Page 16051 findings to the contrary, that he was told he had to quit smoking, change the way he dressed, and go to school on his own time without pay. Yurechko argues that he did not talk to his supervisor or human resources because he did not trust his supervisor or human resources. Yurechko argues that he had to quit because the stress induced by his working conditions was affecting his ability to maintain his sobriety and not abuse drugs.
Yurechko failed to file a motion to correct the findings of the board pursuant to Practice Book § 22-4. A motion for correction of the board's findings is "a necessary prerequisite to a challenge of the board's decision." Calnan v. Administrator, supra, 43 Conn. App. 785. "Where the plaintiff has failed to file a with the board a motion to correct the findings, the Court is bound by the finding of facts determined by the board." Id. In the present case, the court is confined to the factual findings by the board because Yurechko failed to file a motion to correct the board's findings. Therefore, the court is limited to a review of the record to ensure that the factual findings in the record support the board's decision. "The court's ultimate duty is to decide only whether, in light of the evidence, the board of review has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Bennett v. Administrator, 34 Conn. App. 620, 626, 642 A.2d 743
(1994).
"As a general rule, the application of statutory criteria to determine a claimant's eligibility for unemployment compensation under General Statutes §§ 31-235 and 31-236 involves mixed questions of fact and law in which the expertise of the administrative agency is highly relevant." (Internal quotation marks omitted.) United Parcel Service, Inc. v.Administrator, 209 Conn. 381, 386, 551 A.2d 724 (1988). General Statutes § 31-236 (a)(2)(A) provides, in pertinent part, that "an individual shall be ineligible for benefits . . . [i]f, in the opinion of the administrator, the individual has left suitable work voluntarily and without good cause attributable to the employer . . . and provided further, no individual shall be ineligible for benefits if he leaves suitable work for sufficient cause connected with his work including leaving as a result of changes in conditions created by his employer. . . ."
"Corresponding regulations, § 31-236-22 (a)(1), specify that in determining whether an individual has left suitable work for sufficient cause connected with work, the administrator must find, with respect to working conditions, that . . . during the course of employment, the individual's employer substantially changed a working condition established in the employment agreement and such change had a significantly adverse effect upon the individual; or . . . working CT Page 16052 conditions threatened the individual's health due to his own medical condition. . . ." (Internal quotation marks omitted.) Acro Technology,Inc. v. Administrator, 25 Conn. App. 130, 135, 593 A.2d 154 (1991). "The regulations further require the administrator to find that the individual expressed his dissatisfaction regarding the work condition to his employer and unsuccessfully sought a reasonable resolution before leaving his employment." Id.
"An individual leaves suitable work for cause within the meaning of the statute, when he leave employment for reasons which would impel the ordinary reasonable person to leave and which provide the individual with no reasonable alternative but to terminate his employment. . . . As a matter of law, therefore, a claimant must show that his basis for leaving employment is objectively reasonable and that no reasonable alternative to termination exists." (Internal quotation marks omitted.) AcroTechnology, Inc. v. Administrator, supra, 25 Conn. App. 135. See alsoRobinson v. Unemployment Security Review Board of Review, 181 Conn. 1,23, 434 A.2d 293 (1980). In the present case, the board determined that Yurechko left suitable employment without good cause attributable to his employer. The board further found that the employer's personnel policy provided that an employee should report complaints to the human resources director and that Yurechko failed to bring any of his concerns to the attention of this individual in accordance with the policy.
The board found that the employer attempted to retain Yurechko until June, 1999 by extending the old smoking policy for another six months, and Yurechko indicated he would stay until June. Yurechko, however, did not rescind his resignation letter and his last day of work was December 30, 1998. Yurechko claimed that the criticism from his director, the requirement for 40 hours of training on the employee's own time, and the job related stress caused him to resign his position. The board determined that these reasons did not provide sufficient cause that was attributable to his employer to leave employment. It was determined that Yurechko had the opportunity to remedy these problems by talking to the human resources director, but Yurechko failed to avail himself of this alternative.
The record demonstrates that Yurechko did not talk to the human resources director about his problems at work and that he failed to explore alternatives to leaving his employment. Yurechko did not even attempt to resolve any of his issues with the supervisor prior to resigning. Furthermore, the record shows that Yurechko did not prove that his reasons for leaving were reasons which would impel the ordinary reasonable person to leave his employment and that there was no alternative to terminating his employment. Accordingly, the court finds that the board's decision was supported by the facts in the record and CT Page 16053 such decision was not unreasonable, arbitrary, capricious, illegal or an abuse of discretion. The appeal is dismissed.
Kocay, J.